## COOPER BROS. v. J. ROSENBAUM GRAIN CO.

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 20, 1912.)

SALES (§ 23*)—OFFER TO SELL—ACCEPTANCE —WITHDRAWAL OF OFFER.

    Where, in an action for a breach of a contract to purchase grain, there was evidence showing an acceptance of the offer to purchase made by the defendants by the purchase by plaintiff of the grain in the open market before the communication of a revocation by telegram, there was sufficient evidence to support the action.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 44–48; Dec. Dig. § 23.*]

Appeal from Tarrant County Court; C. T. Prewitt, Judge.

Action by Cooper Brothers against J. Rosenbaum Grain Company. From a judgment on a peremptorily instructed verdict for defendant, plaintiff appeals. Reversed and remanded.

Lattimore, Cummings, Doyle & Bouldin, and Goldsmith & Warren, for appellant. Capps, Cantey, Hanger & Short, for appellee.

CONNER, C. J. R. E. Cooper, of the firm of Cooper Bros., doing business as grain mer-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

chants at Rio Vista in Johnson county, on June 8, 1908, called over the long distance phone the J. Rosenbaum Grain Company of Ft. Worth, Tex., and inquired "if they were in the market for some grain." The company asked how much Cooper "wanted to sell." The answer was "5,000 bushels." Cooper then inquired for the difference "between sacked and loose grain," to which reply was made "one cent"; that they (the company) would give 49 cents per bushel for sacked and 48 for bulk oats and would "leave the offer open until 6 o'clock" of that day. Cooper then went into the local market for oats to fill the offer and purchased 2,000 bushels of unsacked and 3,000 of sacked oats, and about 11 a. m. of the same day again called up the Rosenbaum Grain Company, which answered between 1 and 2 o'clock, and was then told that he (Cooper) "would ship the oats and a car of loose and a car of sacked would go out to-morrow and the other follow immediately." Cooper was then asked, "Haven't you got our telegram countermanding that order?" And Cooper replied, "I have got no telegram at all." He was informed that "a telegram countermanding the order had been sent," and the grain was refused. The telegram referred to was in cipher, but translated as follows: "6/8/08. Cooper Bros. Rio Vista, Texas. 42¢ F O B Rio Vista best new red No. 3 oats or better new sacks El Paso weights and inspection this week's shipment subject to your immediate reply by telegram. J. Rosenbaum Grain Company." It was not actually delivered to Cooper Bros. until about 9 o'clock of the next day after the conversations above detailed. Cooper Bros. sold the oats in question to others for the best price obtainable and instituted this suit to recover the loss. Upon the conclusion of the evidence as hereinbefore substantially stated, the court at appellee's request peremptorily instructed the jury to find for the J. Rosenbaum Grain Company. The verdict and judgment were rendered accordingly, and an appeal duly prosecuted.

We think the court erred as assigned in giving the peremptory instruction. The evidence undoubtedly tended to show an offer on the part of the J. Rosenbaum Grain Company that was accepted within the period of an option given and before any countermanding order had been brought to the notice of appellants. If so, the offer and acceptance constituted an enforceable contract for the breach of which appellee was liable in damages. The court presumably was induced to give the peremptory instruction by the proposition urgently presented here in defense of the court's action, viz., that the contract was unenforceable for want of mutuality. It is true there was no consideration for the option, and until acceptance of appellee's offer there was no contract. Until then the agreement to give the prices stated was wholly unilateral, and neither party was bound. But upon acceptance it became otherwise. It is stated in 35 Cyc. p. 52, on the subject of sales, that: "An offer to buy or sell becomes a binding agreement when the person to whom the offer is made accepts it and communicates his acceptance, or performs an act in compliance with the terms of the offer from which his acceptance may be implied. An offer, unless withdrawn, may be accepted within the time expressly or impliedly limited. * * * An acceptance may be revoked by communication to that effect before the acceptance is communicated but not after." Again, Mr. Beach, on the Modern Law of Contracts (volume 1, § 37), says that: "A person who has made an offer must be considered as continuously making it until he has brought to the knowledge of the person to whom it was made that it is withdrawn." And in the two succeeding sections it is stated that, to revoke a proposal once made, the revocation must be communicated before acceptance; that an uncommunicated revocation is, for all practical purposes, and in point of law, no revocation at all; that a revocation sent by post does not operate from the time of posting it. We think these authorities state the law on the subject as it is established by the decisions. Prima facie, therefore, under the facts stated, appellants were entitled to recover notwithstanding the transmission of the telegram alleged to constitute a revocation, and regardless of the further contention as to whether prior to appellants' acceptance either party to the litigation regarded themselves bound.

It is ordered that the judgment be reversed and the cause remanded for another trial.