## H. L. ANTWINE V. L. P. REED.

No. A-942. Decided February 5, 1947.
Rehearing overruled March 5, 1947.
(199 S. W., 2d Series, 482.)

*T. Westley Hook,* of Alvarado, and *H. H. Cooper,* of Amarillo, for petitioner.

It was error for the lower courts to hold that the offer of the Amarillo National Bank, as contained in its written contract, was not withdrawn by said bank when it instructed its agent not to accept said contract and to return it unexecuted. Clegg v. Brannon, 111 Texas 367, 234 S. W. 1076; American Natl. Ins. Co. v. Warnock, 131 Texas 457, 114 S. W. (2d) 1161.

*H. J. Cureton,* of Meridian, for respondent, L. P. Reed.

After the bank's letter accepting Reed's offer to buy the land and the delivery of the bank's formally executed contract to Reed, with no time limitation, Reed signed and offered delivery with earnest money at the place of business of the bank's agent, as required by the terms of the contract, and before the bank got a higher bidder and made an effort to withdraw from the contract. Even, if the bank had a right to withdraw after its written acceptance and delivery of its executed contract, it could not do so without giving Reed ample notice and opportunity to act after such notice. American Warehouse Co. v. Ray, 150 S. W. 763; International Harvester v. Campbell, 96 S. W. 93; Orbeck v. Alfei, 276 S. W. 947.

Mr. Justice Slatton delivered the opinion of the Court.

L. P. Reed sued Antwine for specific performance of a contract to convey certain land. The contract of sale was executed by the Amarillo National Bank as vendor and L. P. Reed as vendee. The land was conveyed by the bank to Antwine subsequent to the date of the contract of sale. It was alleged that Antwine bought the land from the bank with full knowledge of the rights of Reed. A tender of the purchase price of the land provided for in the contract with the bank was made during the trial by Reed.

The cause was tried by the trial court without the aid of a

jury and judgment was in favor of Reed. The Waco Court of Civil Appeals affirmed the judgment of the trial court. 194 S. W. (2d) 614.

The land, situated in Bosque County, was listed by the bank at Amarillo with a real estate broker for sale at $10.00 per acre. The broker lived and operated his real estate business in Bosque County. The land was offered for sale by the broker to Reed. After inspecting the land, Reed authorized the broker to offer the bank $8.00 per acre for the land. The bank, after receiving Reed's offer, prepared a written contract, executed the same, and sent it to the broker in Bosque County for presentation and acceptance by Reed. The price of the land contained in the written contract was the same as the price offered by Reed. The contract provided for an earnest money deposit, but the amount was left blank. The contract and the letter of transmittal to the broker were delivered to Reed shortly after its receipt by the broker. No time was fixed in the written contract for its acceptance. The contract and letter of transmittal consisted of an offer to sell the land to Reed on compliance with the provisions of the contract. On November 15, 1944, the bank, by letter, sought information from the broker concerning the contract, and requested the broker to fill in the amount of the earnest money deposit and return the signed contract to them. Thereupon the broker advised the bank that Mr. Reed was in Oklahoma and was expected back the last of the week, at which time the broker would endeavor to close the transaction. The broker's letter was dated November 20, 1944. It is seen, therefore, that the bank and its agent, the broker, did not treat the lapse of time as having revoked the offer of the bank to sell the land. The bank did not have any further contact with the broker concerning the transaction until December 18, 1944. There is evidence in the record tending to show that Reed signed the contract on December 13, 1944, and had left the contract at the office of the broker before the bank communicated with the broker, on December 18, 1944. The evidence tends to show that the broker delivered the bank's contract, together with the letter of transmittal, to Reed, with the statement that Reed should sign them at his convenience. The bank made no effort to communicate with Reed with regard to taking the land off the market other than the communication with the broker. Neither did it notify Reed of having contracted with Antwine on or about the 20th day of December, 1944, for the sale of the land. The first notice Reed had of the bank's revocation of its offer to him was communicated by the broker on or about the 28th day of December, 1944. In dealing with Antwine the bank evidently acted upon the in-

formation gained from the broker to the effect that Reed had not signed the contract before the broker left Bosque County. According to the evidence in the record, this information turned out to be inaccurate.

Reed evidently considered the offer of his to buy the land a contract between the parties when the bank accepted it with the return of the written executed instrument. His offer was made by letter signed by the broker alone to the bank. However, the contract which was executed by the bank differed in terms with the offer of Reed, and did not amount to an acceptance of Reed's offer, but amounted in law to a counter proposal by the bank to be accepted or rejected by Reed. This is so regardless of the fact that the consideration for the land was the same in both the proposal of Reed and of the bank.

■ Through the first point of error it is claimed that the Amarillo National Bank is a necessary party to this suit. The contract sought to be enforced is between the Amarillo National Bank as vendor and L. P. Reed as vendee. It indisputably appears that the bank parted with all title and interest in the land by its contract of sale and deed, which were executed to Antwine before this suit was filed.

Under the circumstances it has been held in this state that the prior owner of the land is not a necessary party to the suit of a holder of a preference right to purchase the land from the original owner. Hart v. Wilson, 281 S. W. 339 (Com. App.) 288 S. W. 133. We perceive no good reason to require Reed to litigate with the bank. This action is for the purpose of obtaining the conveyance of the land and not to recover damages for the breach of the contract under which Reed claims. Antwine did not implead the bank. He objected because Reed did not do so. It has been ruled in this Court that where:

"One who, with knowledge, actual or constructive, of the executory contract acquires the legal title under or through a deed or mortgage executed by the vendor subsequently to an executory contract for the sale of land * * * may be compelled, at the suit of the vendee under the executory contract, to perform the contract by conveying the legal title, if the conditions are such that such relief could have been granted against the vendor if he had not transferred the legal title." Langley v. Norris, 141 Texas 405, 173 S. W. (2d) 454.

Since Reed may obtain complete relief sought in this suit against Antwine, and Antwine not having impleaded the bank, the lower courts properly overruled Antwine's pleas seeking to abate the suit because Reed did not make the Amarillo National Bank a party to his suit.

■ It is elemental that before Reed can support his action for specific performance of a contract to convey land he must first show a good and valid contract was entered into by the parties. That the contract was duly executed by the bank is admitted, but whether the proposed contract was duly accepted by Reed is the important question for us to determine. The bank communicated with the broker at Fort Worth and inquired if the contract had been signed by Reed. The broker advised the bank that it had not been signed before the broker left Bosque County. Thereupon, the bank advised the broker to take the land off the market. Antwine takes the position that the bank, so long as the proposed offer had not been accepted by Reed, had the authority to sell the land to another without giving notice to Reed. This is not a correct view of the law. Having reference to a revocation of an offer in 12 American Jurisprudence, 528, on the subject of contracts, Section 31, it is said:

"The revocation must, however, be communicated to the offeree before he has accepted, though a sale to another person of real property covered by an offer amounts to a revocation thereof provided such sale is known to the offeree."

On the same subject, in 17 C. J. S., 398, Contracts, Section 50d, it is said:

"The revocation of an offer, however, must ordinarily be communicated to prevent an acceptance from changing it into a binding contract, and it is not communicated to the offeree unless it is actually brought to his knowledge. * * * Formal notice, however, is not always necessary, it being sufficient that the person making the offer does some act inconsistent with it, as, for example, selling the property, and that the person to whom the offer was made has knowledge of such Act."

See: Mckay v. Tally, 220 S. W. 167; Washington v. Rosario Mining & Milling Co., 67 S. W. 459; Whitaker v. Zeihme, 61 S. W. 499; Cooper Bros. v. J. Rosenbaum Grain Co., 144 S. W. 358; Southern Oil Co. v. Wilson, 56 S. W. 429; Oliver v. Collins, 49 S. W. 682; Williston on Contracts, Revised Edition, 1936, p. 158, Sec. 56; also Sec. 57, p. 160; 1 Page on Contracts, Volume 1,

1905, p. 65, Sec. 36; 1 Page on Contracts (Second Edition, 1920), p. 204, Sec. 134; Simkins on Contracts and Sales, 1913, p. 28; Restatement of the Law of Contracts, Vol. 1, Sec. 41, p. 49; 10 Texas Jurisprudence 34, Contracts, Sec. 16; 125 A. L. R. 989, 990.

■ The evidence is sufficient to support the implied findings of the trial court that Reed had signed the contract before the bank communicated its revocation of the proposal to the broker. The counter proposal of the bank required Reed to deposit earnest money with the broker in an amount to be determined by Reed. The letter of transmittal seems to have required at least ten per cent of the purchase price. The mere signing of the contract without a deposit of the earnest money was not an acceptance of the written proposal of the bank. According to the evidence the broker communicated with Reed concerning the transaction on or about the 27th or 28th of December, 1944, and advised Reed that the bank had directed him to take the land off the market. The broker, Mr. Gilmore, testified as follows:

"Q. When you did see Mr. Reed where did you see him?

"A. On the road between here and his ranch, on way in, on his way to Dallas to the Hospital.

"Q. That was after Christmas?

"A. Sure.

"Q. Did you tell him then?

"A. I told him my instructions I got the week before from Mr. Moore over the 'phone. (Mr. Moore was acting for the bank.)

"Q. You told him Mr. Moore told you over the 'phone to take it off the market, didn't you?

"A. Yes, sir."

&ast; &ast; &ast; &ast; &ast;

"Q. And you never did get the contract in your possession until the 2nd of January (1945) when you got the contract and Mr. Reed's check for $128.00, did you?

"A. Possibly something like that.

"Q. Prior to that time you had told Mr. Reed that the bank had told you the property was off the market?

"A. That is correct."

Mr. Reed on this point testified as follows:

"Q. When did you return from Dallas?

"A. I returned about the first of the month.

"Q. Somewhere near the first of January, 1945, you would say?

"A. Yes.

"Q. You did, or did you not deliver the signed contract to Mr. Gilmore (the broker)?

"A. Yes, sir.

"Q. You did or did not put up the $128.00 with him?

"A. I did at that time. The letter from the bank prior to that time, that letter had expressly stated the matter of putting up the deposit to whether or not I care to do it, because the deal was going to be for cash, and the letter stated—

"Q. How did you understand the letter, what it says there?

"A. Yes, sir.

"Q. You did put up the $128.00 though, didn't you Mr. Reed?

"A. Yes, sir."

Thus it appears from the evidence offered by Reed that the proposal of the bank was never accepted in all of its terms by Reed until after Reed was advised of the bank's. instructions to the broker to take the land off the market. Under the evidence stated and the authorities cited we hold that Reed had received notice of the bank's revocation of the proposed written contract before he had accepted it in all of its terms. Accordingly, there was no contract to sell the land between the parties.

We need cite no authorities on the proposition that Reed is not entitled to a specific performance of a contract which was never entered into by the parties.

Other questions presented by the parties become immaterial, hence need not be noticed.

Accordingly, the judgment of the Court of Civil Appeals, which affirmed the judgment of the trial court in favor of Reed, is reversed and judgment will be here rendered in favor of Antwine against Reed.

Opinion delivered February 5, 1947.

Rehearing overruled March 5, 1947.