C. N. WILLIFORD et ux., Appellants,

v.

Harvey R. SPIES et ux., Appellees.

No. 5468.

Court of Civil Appeals of Texas, Waco.

Oct. 23, 1975.

John B. Kyle, Dallas, Roy W. Hill, Fairfield, Morris W. Hassell, Rusk, for appellants.

W. A. Keils, Jr., Teague, for appellees.

## OPINION

JAMES, Justice.

This is an appeal by Defendant-Appellants the Willifords from summary judgment that Plaintiff-Appellees Spies and wife are owners of "all coal and lignite royalties due and payable under all coal and lignite leases" covering 193.99 acres of land in the W. B. Reed Survey, Freestone County, Texas.

Plaintiffs Spies and wife sued Defendants Williford and wife alleging Defendants sold the 193.99 acres in November 1950, to Ray Minchew by warranty deed; that such conveyance reserved to Defendants:

"One half (½) of all minerals, oil, gas and other minerals in and to and under the above described property herein conveyed";

that said mineral reservation by its own terms did not include coal and lignite under the surface that would be mined and recovered by open pit or strip mining methods; that the Supreme Court case of *Acker v. Guinn*, (Tex.1971) 464 S.W.2d 348 so holds; that Plaintiffs have acquired the rights of Minchew by mesne conveyances; and Plaintiffs prayed judgment that Defendants have no interest in the coal and lignite by virtue of the reservation.

Defendants answered that in November 1949, and prior to the conveyance to Minchew they had entered a mineral lease with Roger Steward which severed the mineral estate specifically including the coal and lignite from the surface; that such mineral lease was recorded in the Deed Records of Freestone County in March 1950, and placed Minchew and all his successors in title on notice thereof; and further that the surface estate has not been rendered useless by the strip mining of the coal and lignite, but has been restored and improved; and prayed Defendants have judgment for ½ of the royalties from the coal and lignite leases. A copy of the mineral lease is attached to Defendants' answer.

Plaintiffs moved for summary judgment asserting there were no questions of material fact, that they were owners of all the royalties of coal and lignite mined by the open pit or strip mining methods, that the Supreme Court in *Acker v. Guinn*, (Tex. 1971) 464 S.W.2d 348, held that a mineral reservation as Defendant reserved was not effective to reserve minerals that would be mined by open pit or strip mining methods; that the coal and lignite was removed by strip mining methods; that the surface was

destroyed or substantially impaired by such strip mining methods; and that it was not contemplated that the mineral reservation of Defendants to "all the oil, gas and other minerals," when mined would result in destruction of the surface estate.

Plaintiffs attached: 1) the deed from Defendants to Minchew, and the mesne conveyances (all referring to the reservation in the Williford-Minchew deed into themselves) 2) the affidavit of Spies that the coal and lignite has been mined by strip mining methods; that said lands were destroyed for agricultural and grazing purposes; that the surface of the lands were consumed or depleted by such strip mining; 3) the affidavit of J. A. Hill, land man for the mining company, which states he personally informed Plaintiffs their land would be strip mined for the production of lignite, and the surface would be destroyed for any use by them for agricultural purposes; and that the tract has been strip mined and the lignite removed. Hill further stated that on the land in question, the lignite was 40 to 50 feet below the surface, and was recoverable only by the method of open pit or strip mining, "where the 40 to 50 feet of overburden is stripped off, which in effect, removes the surface down to the lignite."

Defendants replied to Plaintiffs' motion for summary judgment asserting fact issues were raised as to: whether the reservation of "oil, gas and other minerals" included the coal and lignite because they had previously severed the mineral estate including the coal and lignite by lease; whether the surface estate has actually been consumed or the utility destroyed for agricultural or grazing purposes, and other asserted fact issues hereinafter discussed.

Defendants attached the affidavit of C. N. Williford that Defendants prior to the conveyance with reservation to Minchew, had severed the coal and lignite by lease to Steward; that such lease states the parties contemplated the use of strip mining to recover the coal and lignite; and further that the surface of the land has not been destroyed or substantially impaired for ag-ricultural or grazing purposes by the strip mining, in that the top soil was replaced after the mining and that trees and coastal bermuda have been planted, and the surface estate has probably been improved.

The trial court rendered summary judgment that Plaintiffs are owners of all the coal and lignite royalties, and that Defendants do not own any interest in the royalties.

Defendants appeal on one point: "The trial court erred in granting the Motion for Summary Judgment".

The question for determination is whether Plaintiffs established as a matter of law that Defendants' mineral reservation did not reserve a one-half interest in the coal and lignite.

Our Supreme Court in *Acker v. Guinn*, (Tex.1971) 464 S.W.2d 348, held that a mineral deed conveying "an undivided ½ interest in and to all of the oil, gas and other minerals" under a certain tract of land, conveyed no interest in the iron ore. The court held that while the iron ore is a mineral, since it had to be mined by open pit or strip mining methods which would destroy or substantially impair the surface, it was not in the contemplation of the parties to be conveyed. The court further held:

"A grant or reservation of minerals by the fee owner effects a horizontal severance and the creation of two separate and distinct estates: an estate in the surface and an estate in the minerals. * * * The parties to a mineral lease or deed usually think of the mineral estate as including valuable substances that are removed from the ground by means of wells or mine shafts. This estate is dominant, of course, and its owner is entitled to make reasonable use of the surface for the production of his minerals. *It is not ordinarily contemplated, however, that the utility of the surface for agricultural or grazing purposes will be destroyed or substantially impaired. Unless the con-*

*trary intention is affirmatively and fairly expressed, therefore, a grant or reservation of 'minerals' or 'mineral rights' should not be construed to include a substance that must be removed by methods that will, in effect, consume or deplete the surface estate."* (emphasis supplied.)

The problem before us is one of interpretation of the rule announced in *Acker v. Guinn* and applying the rule to the case at bar. When our Supreme Court said, as quoted in the preceding paragraph, "Unless the contrary intention is affirmatively and fairly expressed, therefore, a grant or reservation of 'minerals' or 'mineral rights' should not be construed to include a substance that must be removed by methods that will, in effect, consume or deplete the surface estate," did the court mean that "the contrary intention" must be expressed in the instrument itself containing the grant or reservation, or may such "contrary intention" be shown by proof of attending circumstances?

■ If the "contrary intention" must be expressed in the instrument containing the grant or reservation, then it becomes a matter of construction of the language used in the grant or reservation and thereby becomes a question of law, as contended by Plaintiff-Appellee, Spies. On the other hand, if the "contrary intention" may be shown by proof of the attending circumstances, then such "contrary intention" becomes a fact question and thereby raises a material fact issue as contended by Defendant-Appellant, Williford. Defendant-Appellants argue that because of the existence of the 1949 recorded lease from the Willifords to Roger Steward, hereinabove referred to, (which specifically contemplated that the coal and lignite would be mined by open pit or strip mining methods), that Plaintiff-Appellee Spies was put on at least constructive notice that the surface would be destroyed or impaired for agricultural or grazing purposes by such mining; and that this raised a fact issue regarding the intention of the parties to "destroy or substantially impair" the surface by mining the

coal and lignite. We do not agree with this argument.

The 1949 lease from Willifords to Steward served only as notice to Plaintiff-Appellees that the property was under a coal and lignite lease. There is nothing in this instrument to place Plaintiff-Appellees on notice that the Willifords are entitled to one-half of the royalties from the coal and lignite where the same were removed by open pit or strip mining methods. The only instrument that places Plaintiff-Appellees on notice of Defendant-Appellants' claim to the coal and lignite royalties in question is that containing the mineral reservation in the original deed from Williford to Minchew, based upon the term "other minerals." The deed from the Willifords to Minchew does not in any way directly or indirectly make reference to the 1949 lease from the Willifords to Steward, hereinabove mentioned.

The deed (from Willifords to Minchew) in the case at bar is like the deed in *Acker* in that, "Aside from the general reference to 'other minerals', there is nothing in the deed even remotely suggesting an intention to vest in the (grantor) the right to destroy the surface." Under the rule in *Acker*, therefore, the reservation in our deed of "other minerals" does not reserve minerals such as lignite which must be mined by open pit or strip mining methods.

■ The deed in question (from Williford to Minchew) is not ambiguous. It therefore follows that it became the duty of the trial court to give the deed the above construction as a matter of law, without looking to the attending or surrounding circumstances for explanation. Our Supreme Court in *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, (1940) 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217, enunciated this rule applicable to the case at bar: —"When the instrument by its terms plainly and clearly discloses the intention of the parties, or is phrased in language not fairly susceptible of more than one interpretation, the intention of the

parties is to be ascertained by the court as a matter of law from the language used in the writing and without aid from evidence as to the attending circumstances." Also see *Heinatz v. Allen*, (1949) 147 Tex. 512, 217 S.W.2d 994.

We therefore hold that as a matter of law the Willifords' reservation of "other minerals" did not include coal and lignite that must be removed by the open pit or strip mining methods, and it necessarily follows that Defendant-Appellants the Willifords are not entitled to any of the royalties from the mining of such coal and lignite.

Defendant-Appellants contend that the summary judgment proof raised material fact issues that necessitate a reversal of the trial court's judgment. We do not agree that any material fact issues are raised by this record.

First, Defendant-Appellants urge that a fact issue is raised regarding whether the strip mining methods would destroy or substantially impair the surface for agricultural or grazing purposes. We do not agree. The affidavit of J. A. Hill, senior land man for Texas Utilities Services, Inc., stated that the top soil or overburden was removed and stripped off to a depth of 40 to 50 feet down to the lignite deposits, that the lignite was removed by the open pit or strip mining method, and that he personally informed Plaintiff-Appellees that the surface of their land would be destroyed for any agricultural or grazing purposes.

This summary judgment evidence was corroborated by the affidavit of Plaintiff-Appellant Harvey R. Spies. Defendant-Appellants rely upon the affidavit of Defendant-Appellant C. N. Williford, which states that after removal of the coal and lignite, the mining company "replaced the topsoil, planted trees and coastal bermuda which, in fact, has probably improved the surface estate." Defendant-Appellants contend that even though they destroyed the surface for agricultural and grazing purposes in mining the lignite, that since they replaced the topsoil and planted trees and grass there-

after that a fact issue is raised concerning destruction of the surface. We overrule this contention, because it is undisputed that the strip mining destroyed the surface for agricultural or grazing purposes. The fact that the mining company may have taken steps after completion of the mining operations to replace the soil and replant trees and grass is, in our opinion, immaterial.

Defendant-Appellants next argue that a fact issue was raised regarding whether the parties "contemplated any impairment of the surface estate by mining operations other than tunnelling or shafting." We overrule this contention, because in our opinion the "contemplation" of the parties must be ascertained from the wording used in the original mineral reservation in the 1950 deed from Willifords to Minchew. *Acker v. Guinn*, supra, has held that the term "other minerals" is not ambiguous, and without an expression in the deed of reservation that the surface will be destroyed or impaired, that minerals that must be strip mined belong to the surface estate.

Defendant-Appellants further contend that a fact issue is raised by the record concerning whether the Plaintiff-Appellees are estopped to assert that Defendant-Appellants' mineral reservation does not include coal and lignite. This fact issue, they say, is raised because on April 3, 1970, Plaintiff-Appellees Spies and wife executed a deed to L. D. Cross, Trustee, conveying the land in question wherein Spies and wife retained a mineral reservation of "all of the oil, gas and other minerals." Defendant-Appellants say that because this mineral reservation is similar and in substantially the same wording as in the deed from Willifords to Minchew, that Plaintiff-Appellees are estopped to assert that such reservation does not include coal and lignite. We do not agree. This activity by the Plaintiffs has not caused any detriment to the Defendants and will not, therefore, support

**132**

the plea of estoppel. Moreover, the summary judgment proof also shows a quitclaim deed from L. D. Cross, Trustee, to Harvey R. Spies and wife, dated February 21, 1975, wherein L. D. Cross, Trustee, quitclaimed "all my right, title and interest in and to all royalties payable on production of coal and lignite" on the land in question. Obviously, Plaintiff-Appellee Spies and wife base their claim to the lignite royalties on this deed, and not upon the mineral reservation in their 1970 deed to L. D. Cross, Trustee. For this reason, there could not possibly be any fact issue of estoppel against Plaintiff-Appellees.

Finally, Defendant-Appellant complains of the failure of the trial court to join as Cross-Defendants, Texas Utilities Services, Inc., and Texas Utilities Services, Inc., d/b/a Industrial Generating Company, the alleged holders of the lignite royalty funds in controversy. Defendant-Appellants filed a motion for leave to join said parties as cross-defendants, attached to which was a Third-Party Cross-Action. However, the record does not contain any order by the trial court granting leave to join such Third-Party Defendants, nor does it show any request for a setting of such motion for hearing, nor does it show any service of citation pursuant to such Third Party Cross-Action. In this state of the record, Defendant-Appellants have waived their rights to implead said Cross-Defendants and cannot be heard to complain on this point on appeal. See Rule 38, Texas Rules of Civil Procedure; *Antwine v. Reed*, (Waco, Tex.Civ.App.1946) 194 S.W.2d 614, reversed on other grounds 145 Tex. 521, 199 S.W.2d 482. The nature of the case at bar is by Spies and wife against Williford and wife to adjudicate entitlement to the coal and lignite royalties in controversy *as between these parties*. There is nothing in this record to show that Third-Party Cross-Defendants as holders of the royalty monies are necessary parties to this suit.

Judgment of the trial court is affirmed.

Affirmed.