**RHS INTERESTS INC., Appellant,**

v.

**2727 KIRBY LTD., Appellee.**

**No. 01–98–00707–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 10, 1999.

Gregory S. Coleman, Weil, Gotshal & Manges, L.L.P., Houston, David E. Marcus, Weil, Gotshal & Manges, L.L.P., Houston, for appellant.

Paul J. McConnell, De Lange, Hudspeth, McConnell & Tibbets, L.L.P ., Houston, Ben A. Baring, Jr., De Lange, Hudspeth and Pitman, Houston, for appellee.

Panel consists of Justices COHEN, HEDGES, and NUCHIA.

## OPINION

HEDGES, Justice.

Appellant, RHS Interests, Inc. filed suit against appellee, 2727 Kirby Ltd. and other defendants as the result of a failed real estate deal, alleging claims of breach of contract, fraud, fraudulent inducement, and specific performance. Kirby moved for summary judgment on the specific performance claim. The trial court granted Kirby's motion for summary judgment and severed that claim from the remaining claims asserted by RHS. In two issues presented, RHS contends that the trial court erred: (1) in granting Kirby's motion for summary judgment that RHS take nothing on its specific performance claim based on the contention that the parties entered into a valid, enforceable, and binding contract that satisfied the statute of frauds and (2) in denying RHS's request for additional time to conduct discovery before addressing the motion for summary judgment. We affirm.

## Background

Kirby owns property known as the River Oaks Centre Office Building, located at 2727 Kirby, Houston, Texas. The property was listed for sale by David Joachim of International Realty Concepts, Inc. In November 1997, RHS sent Kirby a letter offering to purchase the property for $3,000,000. Kirby never agreed to or accepted this offer.

In December 1997, RHS sent another letter to Kirby offering to purchase the property, raising its bid to $3,075,000. After several telephone calls, Joachim informed RHS that its bid had been accepted. Joachim promised to follow up their oral agreement with written confirmation. He prepared and signed a letter and forwarded it to RHS on December 22, 1997. It is this letter that forms the basis of RHS's claim for specific performance.

## Standard of Review

Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). In reviewing the summary judgment, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in its favor, and take as true all evidence favorable to it. *Id.; Bangert v. Baylor College of Med.,* 881 S.W.2d 564, 565–66 (Tex.App.—Houston [1st Dist.] 1994, writ denied). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense as a matter of law. *Johnson,* 891 S.W.2d at 644.

**Failure to Allow Time for Discovery**

In issue two, RHS complains that the trial court erred in denying its request for additional time to conduct discovery before addressing Kirby's motion for summary judgment. RHS filed its lawsuit in February 1998. Kirby moved for summary judgment on March 12, 1998, and the trial court held a hearing on the summary judgment on May 15, 1998. The trial court rendered judgment and severed the specific performance claim on June 16, 1998.

In its various responses to Kirby's summary judgment motion, RHS sought additional time to complete discovery. RHS specified the discovery it felt it needed to undertake and emphasized the short time the case had been on file.

■ When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance. TEX. R.CIV.P. 166a(g), 251, 252; *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex.1996). RHS did not attach affidavits in support of its need for a continuance to its various responses, nor did it file a verified motion for continuance. Therefore, it has waived its contention that it was denied adequate time for discovery.

We overrule issue two.

**Propriety of Summary Judgment**

In issue one, RHS challenges the propriety of the summary judgment denying its specific performance claim. Kirby moved for summary judgment on five grounds: (1) there was no binding contract between the parties; (2) the agreement did not meet the requirements of the statute of frauds; (3) the contract did not contain a sufficient legal description of the property; (4) the contract did not contain the material terms of the contract; and (5) there was no consideration for the contract.

The summary judgment order did not state the grounds on which the motion was granted. When there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was rendered, appellant must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex.1993). If the appellant fails to negate each ground on which the judgment may have been rendered, the appellate court must uphold the summary judgment. *Id.*

**Lack of Consideration**

In its final ground for summary judgment, Kirby argued that because no earnest money had been deposited by RHS, there was no valid consideration for any contract, and thus no contract to be specifically enforced. The correspondence between the parties is important, including RHS' offers of November 12 and December 2, 1997, and the letter from Joachim that RHS contends is the binding contract entitling it to specific performance.

■ RHS contends that the only relevant document in this case is the letter from Joachim. It argues that its two written offers are irrelevant because the first was expressly rejected, and the second expired by its terms on December 16, 1997. RHS contends that the offer Joachim accepted on December 22 was not its second written offer, but rather was its oral offer made by phone to Joachim in several conversations from December 17 to December 22. RHS would have to take this position in order to prevail because both its written offers provided, "This offer is a summary of a transaction to be more fully described in an Earnest Money Contract the specifics of which will be negotiated in good faith. This letter serves only as an offer ... and is not binding as an agreement unless and until a fully executed Earnest Money contract is signed." None ever was. Both of RHS's written offers were "based on the following terms and conditions: ... Earnest Money: $15,000 to be held in escrow." None ever was.

RHS took the opposite position in the trial court, however. In its response to Kirby's motion for a partial summary judgment, RHS stated:

Then, by letter dated December 2, 1997, RHS submitted its second offer to buy the Building for $3,075,000.... After more than two weeks, Mr. Joachim notified RHS by telephone on December 19, 1997 that [Kirby] had accepted RHS' second offer to buy the building for $3,075,000.... In order to facilitate the closing, Mr. Joachim demanded an expedited inspection period and closing, which could be accomplished if RHS immediately began its preliminary inspection while [Kirby] prepared the formal earnest money contract.... In exchange for RHS immediately performing its due diligence, Mr. Joachim promised to immediately cease marketing the Building while [Kirby's] attorneys finalized formal written documents.

RHS' president swore by affidavit to the same facts.

Now, on appeal, RHS takes a different position. It states:

[Kirby's] repeated references to RHS' second offer is misplaced because that offer expired on its own terms when it was not accepted by December 16, 1997. *This is important because at the time RHS and the partnership began negotiating the terms of the acceptance letter, those negotiations took place outside RHS' second offer.*

Reply Brief of RHS, page 14, note 11 (emphasis supplied).

We agree that the issue is important, indeed decisive. If Joachim was not accepting RHS' second written offer, it is much easier to argue, as RHS does, that the parties intended for Joachim's letter itself to be their agreement. If, as RHS contended in the trial court, Joachim's letter was accepting RHS' second offer, then RHS should not prevail. That is because Joachim's repeated mention of "a binding Purchase and Sale Agreement" and "a formal Purchase and Sale Agreement" merely

echo the even more plain statement by RHS in its December 2 letter that the letter "serves only as an offer ... and is not binding as an agreement unless and until a fully executed Earnest Money contract is signed." At all times before December 22, RHS insisted that only a fully executed contract—not an informal letter like Joachim's—would bind this deal. We do not believe that RHS should be permitted on appeal to disavow the position it took in the trial court.

■ Nor, in our opinion, does Joachim's letter accept RHS' second offer. The letter is more in the way of a counteroffer, because, instead of accepting RHS's terms, it changes them significantly. It increases the earnest money from $15,000 to $30,750. It changes the deadlines for inspection and for closing. It reduces the broker's commission and changes who shall receive it. But even if Joachim's letter is not an acceptance of RHS' second offer, as RHS contended below, and is instead the result of negotiations after December 16 that "took place outside RHS' second offer," as RHS contends on appeal, we still think the letter is not a binding contract. The letter should be seen as a part of continuing (post-December 16) negotiations or as an agreement to agree in the future because:

1. The letter begins by stating, "This letter shall reiterate and reconfirm the seller's response to your offer to purchase the referenced property." The "seller's response" was not an acceptance.

2. Crucial time periods in the purported acceptance letter never began because they were triggered only by the signing of "a binding purchase and sale agreement." These time periods include the end of the "preliminary inspections" and the beginning of the 45–day "inspection period"; the date for earnest money to be received; and the date for the closing. Earnest money, for example, was not considered "at risk" un-

til after the 45–day "inspection period," which in turn did not begin until "the mutual execution of a binding purchase and sale agreement." Under this letter, we cannot determine when the period to buy the building began, when it ended, or when earnest money was at risk.

3. RHS argues that its beginning expensive inspections immediately after December 22 shows that the parties believed there was a binding agreement. We disagree. The December 22 letter provided that appellee would cease all marketing of the property:

> ... to allow Purchaser to begin physical inspections of the property *prior to the execution of the binding Purchase and Sale Agreement ....* The purpose of this period is to allow the Purchaser the opportunity to make himself comfortable with the physical and mechanical systems of the property *but shall in no way limit or supersede his rights under the Inspection Period called for herein above.* (emphasis added)

This language shows that the parties did not yet have a deal. A deal would be consummated only by "the execution of the binding Purchase and Sale Agreement." Moreover, if one construes this letter as a contract, it interferes with the rights under the inspection period.

Appellee characterizes this provision as a "free look" provision, and we agree: RHS never paid for it. In the 32 days from December 22, 1997, when RHS says a binding contract was made, until January 23, 1998, when Kirby disavowed it, RHS never paid or tendered any earnest money to anyone. This conclusion is consistent with the idea that a free look was in progress and that there was no binding contract: there was no earnest money paid to bind it, despite a sizeable amount being called for in the letter.

Finally, the December 22 letter ends with this statement:

> Upon the satisfactory completion of these *preliminary inspections,* a formal Purchase and Sale Agreement shall be *negotiated* beginning January 5, 1998 and is to be completed within Ten Days thereafter.

(emphasis added).

More negotiations plainly lay ahead, among the most important being the terms and deadlines for payment of earnest money. Earnest money is not required, of course, to bind a contract. That fact is irrelevant, however, because RHS admits—indeed it insists—that it owed $30,-750 as earnest money. The fact that RHS never paid or tried to pay any earnest money to bind this alleged new agreement, and Kirby never demanded any, demonstrates that the parties knew that Joachim's letter was not meant to bind anyone.

We do not find RHS's authorities convincing. The *Foreca* case involved neither the sale of land nor the failure to pay earnest money. *Foreca, S.A. v. GRD Dev. Co., Inc.,* 758 S.W.2d 744 (Tex.1988.) Moreover, the language in RHS' offer of December 2 and in appellee's letter of December 22 shows a clearer intent not to be binding than did the document in *Foreca.* The entire provision relied on to avoid the contract in *Foreca* stated, "SUBJECT TO LEGAL DOCUMENTATION CONTRACT TO BE DRAFTED BY MR. DUNLAP." *Id.* at 745. Even that minimal expression of intent *not to be bound* convinced the unanimous Court of Appeals and four supreme court justices that, as a matter of law, there was not yet a contract. *Id.* at 747 (Justices Robertson, Wallace, Mauzy, and Culver dissenting.)

Nor are we persuaded by *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554 (Tex. 1972). Like *Foreca, Ingle* involved neither the sale of land nor the failure to pay earnest money. What *Ingle* had that is missing in the instant case was 18 months of completed contract performance, including the sale of a business, the employment

of its prior owner, and the payment of bonuses required by the alleged contract. "It is of significance that Scott did sell the plant to Ingle; and he did begin to manage it as an employee at the beginning salary of $15,000. He did get the three thousand per year raise. . . ." *Id.* at 555.

The *Scott* court quoted Professor Corbin's treatise for the proposition that courts will more likely find a contract exists when "the parties have already rendered some substantial performance or have taken other *material* action in reliance upon their existing expressions of agreement." *Id.* at 556 (emphasis added). There is no such performance or action in this case. RHS contends its money spent on inspections was substantial performance or other material action. We disagree. The inspections were not material because they were labeled in the letter "preliminary inspections" expressly preceding any binding contract. Moreover, the "preliminary inspections" were expressly excluded from the 45–day "inspection period" that began only after a binding contract was signed. Finally, Kirby's promise to cease all marketing was made expressly "to allow purchaser to begin physical inspections of the property *prior to the execution of the binding purchase and sale agreement.*" These "preliminary inspections" were thus expressly excluded from the "binding purchase and sale agreement," which did not yet exist. If Joachim's letter had been a binding contract, then continued marketing of the property would have been unnecessary for

Kirby, and would have been harmless to RHS, which would have owned the sole right to close the deal.

We believe that this case is controlled by *Antwine v. Reed,* 145 Tex. 521, 199 S.W.2d 482 (1947), in which the supreme court refused specific performance because the land buyer never tendered any earnest money. The supreme court unanimously reversed the lower courts, which had held for the buyer, rendered a take-nothing judgment, and stated the following, which resembles the present case:

> The contract which was executed by the bank differed in terms with the offer of Reed, and did not amount to an acceptance of Reed's offer, but amounted in law to a counter proposal by the bank to be accepted or rejected by Reed. This is so regardless of the fact that the consideration for the land was the same in both the proposal of Reed and of the bank. . . .
>
> . . . The counter proposal of the bank required Reed to deposit earnest money with the broker in an amount to be determined by Reed. The letter of transmittal seems to have required at least 10 percent of the purchase price.[1] The mere signing of the contract without a deposit of the earnest money was not an acceptance of the written proposal of the bank.

*Antwine v. Reed,* 199 S.W.2d at 485. Reed lost because the bank withdrew its offer before he tendered any earnest money. *Id.* at 485–86. RHS never tendered any

---

1. In *Hudson v. Wakefield,* the supreme court later distinguished *Antwine* stating that the parties "never even had a meeting of the minds on how much the earnest money was to be as the space in the proposed contract for the insertion of the earnest money was left blank." 645 S.W.2d 427, 429 (Tex.1983). The *Hudson* court did not mention *Antwine's* statement that "the letter of transmittal seems to have required at least 10% of the purchase price," perhaps because that statement is found near the bottom right column of page 485 in *Antwine,* three columns of dense text away from the statement on page 484, top left column, that the earnest money blank was

never filled in. *Antwine,* 199 S.W.2d at 484–85. Of course, the amount of earnest money was filled in on all three documents in this case, and it more than doubled the last time. Moreover, the *Hudson* court held, under that particular contract, quoted at length in footnote 5, that the earnest money there was not a "condition precedent" because it was not in article IV listing "conditions," but was merely a "covenant" because it was in articles VII and IX. *Hudson,* 645 S.W.2d at 428 n. 5; 430–31. We have no such disparity here. Both of RHS's offers treated earnest money as one of the "conditions" on which the two written "offers" were "based."

earnest money. Therefore, it failed to negate this ground for summary judgment.

### Conclusion

We overrule point of error one.

We affirm the judgment of the trial court.