**Reversed, Rendered, and Remanded and Majority and Dissenting Opinions filed July 25, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00976-CV

---

### KYLE TAUCH, Appellant

### V.

### VIRGINIA ANGEL, TRUSTEE FOR THE GOBSMACK GIFT TRUST, AS ASSIGNEE OF SOUTH STATE BANK, AND SOUTH STATE BANK, Appellees

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2016-33404**

---

### DISSENTING OPINION

Our main task in this summary-judgment appeal is to decide whether two parties formed a contract. The answer turns on the doctrine of implied revocation. Long-recognized but seldom invoked, the doctrine essentially provides that if the offeree learns that the offeror has taken some action inconsistent with the offer, the law deems the offer impliedly revoked, so that the offeree can no longer accept it

to form a contract with the offeror.  In today's case the majority concludes that the offeror, appellee South State Bank ("Bank") did not impliedly revoke an offer it made to appellant Kyle Tauch to settle an outstanding judgment. The summary-judgment proof and governing legal standard show otherwise.

While the Bank's offer to settle the judgment was pending, Tauch learned that the Bank had agreed to assign the same judgment to a third party, appellee Virginia Angel, Trustee for the Gobsmack Gift Trust ("Angel"). Tauch then tried to accept the offer, but the Bank refused.  Litigation followed.  The Bank and Angel prevailed in the trial court, arguing Tauch could not accept an impliedly revoked offer, so the Bank and Tauch could not have formed a contract.  Rejecting the implied-revocation argument, the majority reverses the trial court's summary judgment in favor of the Bank and Angel and renders judgment for Tauch.  The law and summary-judgment proof show as a matter of law that the Bank impliedly revoked its offer, leaving Tauch without the power to accept it or form a contract with the Bank.  With no contract, there could be no breach.  The trial court reached the correct judgment and this court should affirm it.  Because the majority reaches the opposite conclusion, I respectfully dissent.

## The Implied Revocation Doctrine

The Supreme Court of Texas first applied the implied revocation doctrine decades ago in *Antwine v. Reed.*[1]  In explaining how the doctrine works, the high court noted that when an offeror impliedly revokes an offer, the offeree's power of acceptance terminates, meaning no contract can be formed.[2]  The *Antwine* court set a low threshold for invoking the doctrine:  all the law requires to trigger implied

---

[1] 199 S.W.2d 482, 485 (Tex. 1947).

[2] *Id.*

revocation is "that the person making the offer does *some act inconsistent with it*."[3] Under that standard, the Bank impliedly revoked its offer to Tauch.[4]

## The *Antwine* Standard: Some Act Inconsistent with the Offer

All the Bank need show to establish implied revocation is an act by the Bank inconsistent with the offer to Tauch and Tauch's knowledge of the inconsistent act. The inconsistent act in *Antwine* was not a contract with a third party as to the same subject matter.[5] Instead, the inconsistent act that amounted to an implied revocation of an offer to sell land was the offeror's advising the real-estate broker to take the land off the market.[6] The real-estate broker in *Antwine* listed the land for sale by the offeror, and also acted on behalf of the offeree.[7] After the offeror made a counteroffer to the offeree, but before the offeree took the steps necessary to accept the counteroffer, the offeror entered into a contract with a third-party for the sale of the land.[8] Yet, the offeror did not notify the offeree of this third-party contract, nor was there any evidence that the offeree learned about this third-party contract.[9] Because the third-party contract was not communicated to the offeree, that action could not serve as the inconsistent act.[10] But trial evidence did show that the offeror told the real-estate broker to take the land off the market and that the broker told the offeree of this instruction before the offeree took the steps

---

[3] *Id.* (emphasis added).

[4] *Id.* at 485–86.

[5] *See id*.

[6] *See id*.

[7] *See id*. at 484.

[8] *See id*.

[9] *See id*. (stating that the offeror made no effort to communicate with the offeree with regard to taking the land off the market, other than the communication with the broker and that the offeror did not notify the offeree that offeror contracted with a third party for the sale of the land).

[10] *See id.* at 485.

necessary to accept the offer.[11] Thus, the Supreme Court of Texas did not rely on the third-party contract as the inconsistent act supporting an implied revocation.[12] Instead, the high court held that the evidence proved implied revocation based on the offeror's inconsistent act in telling the real-estate broker to take the land off the market and the offeree's knowledge of this act.[13] The majority indicates that an agreement between the offeror and a third-party for the sale of the subject matter of the offer is required for an inconsistent act.[14] This conclusion conflicts with the *Antwine* precedent.[15]

If the high court viewed this single communication as an act inconsistent with a proposed land purchase, then surely we must view the larger action of agreeing to assign the Bank's interest in a judgment to a third party as inconsistent with releasing the same judgment in favor of Tauch. Likewise, if the *Antwine* offeree's knowledge of the seller's instruction to the broker sufficed as notice to the *Antwine* offeree that the offeror had revoked the proposed contract to the *Antwine* offeree, then surely Tauch's receipt of the assignment agreement sufficed to put Tauch on notice of the Bank's implied revocation of its offer to settle the judgment. [16] The *Antwine* court held that in light of the offeror's inconsistent act, the offeror was deemed to have impliedly revoked the offer, so the court found the parties did not form a contract when the offeree later took the steps to accept the offer.[17]

---

[11] *See id.* at 485–86.

[12] *See id.*

[13] *See id.*

[14] *Ante* at 12.

[15] *See Antwine*, 199 S.W.2d at 485–86.

[16] *See id.*

[17] *See id.*

4

Applying *Antwine* to today's case, the Bank impliedly revoked its offer to Tauch when Tauch learned the Bank had agreed to assign the judgment to Angel.[18] Before Tauch communicated an acceptance to the Bank, Angel (through counsel) informed Tauch (through counsel) that the Bank had agreed to assign its interest in the judgment to Angel. That action was inconsistent with the Bank's offer to settle with Tauch.[19] Even if the parties to the assignment agreement agreed that it was not to take effect until the day after Tauch learned of it, the parties already had executed the agreement, and Tauch has not shown that the Bank would have been able to rescind the assignment agreement unilaterally before the agreement took effect the next day.

Before Tauch communicated his acceptance to the Bank, Angel sent a copy of the assignment agreement to Tauch. That agreement was inconsistent with the Bank's offer to settle with Tauch.[20] And, Tauch received notice of the inconsistent action before he sent the April 13 email purporting to accept the Bank's offer. At that point, having learned of the inconsistent action, Tauch could not have accepted the Bank's offer because Tauch's power of acceptance came to an end the moment he received notice of the inconsistent act — before he sent the email acceptance.[21] Simply stated, when Tauch learned that the Bank had executed the assignment agreement, the law deemed the Bank's offer to Tauch revoked.[22]

---

[18] *See id.*

[19] *See id.*

[20] *See id.*

[21] *See id.*

[22] *See id.*

5

**An Act Inconsistent with the Bank's Offer to Tauch**

The majority relies heavily upon its conclusion that because the Bank's assignment to Angel did not become effective until after Tauch sent the email acceptance, the offer could not have been impliedly revoked. By focusing exclusively on the effective date of the assignment agreement, the majority misses the core inquiry — *whether the Bank took some action inconsistent with the offer to release the judgment in Tauch's favor*.  The question is not whether Angel could enforce the assignment on April 13 or even whether the assignment had become executory; rather, the question is whether the Bank's act of agreeing to assign the judgment to Angel (effective the next day) was inconsistent with releasing the same judgment to Tauch.[23]  Whether the assignment's effective date was a day later, a week later, or a month later, agreeing to assign the judgment to Angel was an action inconsistent with releasing the judgment in Tauch's favor.

Agreeing to assign the judgment to Angel is incompatible with releasing the judgment as to Tauch. One cannot be reconciled with the other. Agreeing to assign the judgment to Angel effective April 14 is inconsistent with releasing the judgment as to Tauch on April 13. Any agreement to assign the judgment to Angel is an act inconsistent with releasing the judgment as to Tauch.

The law provides that as soon as Tauch learned of the inconsistent act — the Bank's signing of the assignment agreement — Tauch's power to accept the Bank's offer terminated.[24]  Tauch's knowledge of the inconsistent act operated in law as an implied revocation of the Bank's settlement offer.[25]  A revoked offer

---

[23] *See id*.

[24] *See id*.

[25] *See id*.

cannot be accepted.[26]  So, Tauch's April 13 email purporting to accept the Bank's offer could not and did not form a contract.[27] The legal standard in section 43 of the Restatement (Second) of Contracts is substantially similar to the supreme court's legal standard in *Antwine*, so the result would be the same if section 43 applied to this case.[28]

By taking a definite action inconsistent with its offer to settle with Tauch, the Bank impliedly revoked that offer.[29]  Neither Tauch nor the majority offer any explanation of how the next-day effective date makes the assignment consistent with the offer.  That the assignment would not become effective until the next day does not somehow make the act of agreeing to assign the judgment consistent with releasing it as to Tauch.  Whether the assignment took effect on April 13 or April 14, assigning the judgment to Angel was an act inconsistent with the offer to Tauch.

The majority reasons that the Bank and Angel "did not have an effective contract at the time Tauch accepted"[30] and the Bank "had not yet assigned its interest in the judgment to Angel at the time Tauch accepted the bank's offer to settle."[31] At the very least, the Bank and Angel had formed an executory contract — and Tauch had learned of it, seen it, and even read it — before he purported to

---

[26] *See id.*

[27] *See id.*

[28] Under Restatement section 43 "[a]n offeree's power of acceptance is terminated when the offeror takes definite action inconsistent with an intention to enter into the proposed contract and the offeree acquires reliable information to that effect." Restatement (Second) of Contracts § 43 (1981).

[29] *See id.*

[30] *Ante* at 12.

[31] *Id.*

accept the Bank's offer. Promising to assign the judgment to Angel is an act inconsistent with releasing it as to Tauch.

The majority concludes that entering into an assignment on April 13 that would not take effect until the next day "is not an action that would prevent the bank's April 11 offer to Tauch from materializing into a contract with Tauch should he accept the proposal before April 14, which he did."[32]  But action that would prevent the offer from materializing into a contract is not the supreme court's standard.[33]  All the Bank needed to show was an act inconsistent with the Tauch offer and Tauch's knowledge of that action,[34] and the Bank did.  As a matter of law the Bank impliedly revoked its offer to Tauch before Tauch attempted to accept it via the April 13 email.[35]  The implied revocation killed the offer, so that email could not and did not constitute an acceptance of it.[36]  The Bank and Tauch did not form a settlement agreement.  Without a contract, Tauch cannot possibly prevail on a breach-of-contract claim.

**Scope of Implied Revocation Doctrine**

The majority dubs *Antwine* a "real estate case" and questions whether the implied revocation doctrine applies outside the real estate context.  But nothing in the *Antwine* court's application or discussion of the doctrine limits it to real-estate transactions or restricts its application to any particular context.[37]  Tauch urges this court not to "extend" the implied revocation doctrine beyond the real-estate

---

[32] *Ante* at 13.

[33] *See Antwine*, 199 S.W.2d at 485–86.

[34] *See id*.

[35] *See id*.

[36] *See id*.

[37] *See id*. at 484-86.

context, but neither today's case nor the doctrine itself presents that choice. Because the supreme court has not limited the doctrine to real-estate cases, applying it in today's case hardly amounts to an extension. Quite the opposite, because the high court has not limited the implied revocation doctrine to any particular genre of cases, we would have no legitimate basis for doing so.[38]

## Conclusion

The trial court correctly granted Angel's motion for summary judgment and correctly denied Tauch's motion for summary judgment. The trial court acted properly in signing a final judgment that Tauch take nothing on his claims against Angel and the Bank, and the trial court correctly awarded Angel and the Bank their attorney's fees. Because Tauch should not prevail on appeal, he should not recover his fees from Angel and the Bank.


/s/     Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Jewell and Bourliot (Jewell, J., majority).

---

[38] The majority concludes that the implied revocation doctrine "typically, if not exclusively, applie[s] in real-estate cases." But the comment to the Restatement (Second) of Contracts § 43 does not support that conclusion. *See ante* at 10-11, n.2. Comment b merely observes that "The rule of this Section has been applied *most frequently* to offers for the sale of an interest in land." Restatement (Second) of Contracts § 43 cmt. b.