Ken E. MACKEY and the Madrid and Laredo's Trading Company, Ltd., Appellants,

v.

GREAT LAKES INVESTMENTS, INC. and Great Lakes Interests, Inc., Appellees.

No. 04–06–00277–CV.

Court of Appeals of Texas, San Antonio.

March 12, 2008.

judgment because unresolved matters remain pending in the trial court between Madrid and Great Lakes Investments, Inc./Great Lakes Interests, Inc. We conclude the trial court's judgment is a final appealable judgment and affirm the trial court's judgment.

Alice Oliver–Parrott, Maria Teresa Arguindegui, Burrow & Parrott, L.L.P., Houston, Dennis M. Sanchez, Francisco J. Zabarte, Robert A. Whittington, Sanchez, Whittington, Zabarte & Wood, L.L.C., Brownsville, David Horton, South Padre Island, R. Glen Ayers, Langley & Banack, Inc., San Antonio, TX, for Appellant.

Alberto Alarcon, Hall, Quintanilla & Alarcon, L.L.C., Laredo, TX, for Appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice.

## OPINION

CATHERINE STONE, Justice.

Great Lakes Investments, Inc./Great Lakes Interests, Inc. and Ken Mackey assert competing claims to royalty payments under an oil and gas lease. After the trial court determined Great Lakes Investments, Inc./Great Lakes Interests, Inc. owned the disputed royalty payments, Mackey filed this appeal claiming that the trial court erred by granting summary judgment in favor of Great Lakes Investments, Inc./Great Lakes Interests, Inc.[1] The Madrid and Laredo Trading Company, Ltd., an intervenor in the underlying lawsuit, also appeals, claiming the trial court's judgment is not a final appealable

### BACKGROUND

On January 12, 1989, Blas and Rosina Martinez (the "Martinezes") executed a promissory note in the amount of $1,001,275.94 payable to First Federal Savings and Loan Association of Laredo ("First Federal"). The note was secured by a deed of trust lien on the following property:

Certain grants of land situated in the Dolores Subdivision of the Jose Vasquez Borrego Grant, Abstract 209, Zapata County, Texas, and more fully described in a Warranty Deed dated May 31, 1966, from Euxodio Martinez and Tomasa G. Martinez to Blas M. Martinez and Rosina Urteaga Martinez recorded in Volume 136, pages 384–90, Deed Records of Zapata County, Texas; together with all improvements situated thereon; and,

A security interest in and to Grantors' .0459515 interest in and to all of the gas which may be produced from the 335.2025 acre pooling unit more fully described in Unit Declaration by Gulf Oil Corp. filed and recorded in Vol. 217, p. 593, of the Deed Records of Zapata County, Texas.

\*     \*     \*

Lot Number One Hundred Ten (110), Block Twenty-two (22), in the City of San Ignacio, Zapata County, Texas.

---

1. Mackey passed away after filing this appeal. In accordance with Texas Rule of Appellate Procedure 7.1, we have proceeded to adjudicate this appeal "as if all parties were alive." Tex.R.App. P. 7.1(a)(1).

The deed of trust also reflected that the Martinezes included as part of their security for the debt "all leases now existing or hereafter made" and "all the rents and revenues of the Property including those now due or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property." First Federal recorded its note in Zapata County, Texas on September 21, 1989.

On November 12, 1992, the Martinezes, in exchange for oil and gas royalty payments, agreed to lease to Chevron USA, Inc. ("Chevron") part of the property they had used to secure their note with First Federal. Around this same time, one of the Martinezes' other creditors, First National Bank of South Texas ("FNBST") sued the Martinezes. The Martinezes and FNBST resolved their dispute and entered into an agreed judgment on June 8, 1993. Under the terms of the agreed judgment, the Martinezes agreed to pay FNBST the sum of $124,731.09. The Martinezes, however, failed to satisfy their obligation to FNBST following the court's entry of judgment.

Several events occurred over the next several years involving the Martinezes and their creditors. First, on February 11, 1994, the Martinezes filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of Texas.[2] Second, in an effort to create a judgment lien against the Martinezes' property, FNBST recorded its Abstract of Judgment in Zapata County, Texas on February 14, 1994. Finally, on June 5, 1995, MC Investments acquired the promissory note and deed of trust lien held by First Federal. Upon acquiring the note and deed of trust from First

Federal, MC Investments began negotiating with the Martinezes regarding payment of their outstanding obligation.

The Martinezes and MC Investments were ultimately able to reach a settlement agreement concerning the Martinezes' outstanding obligation. On March 11, 1997, the Bankruptcy Court confirmed the Martinezes' plan of reorganization, which referenced the Martinezes' obligation to MC Investments. The plan of reorganization confirmed by the court provided that the Martinezes would sign two new promissory notes to MC Investments: one note for $500,000 and another note for $1,000,000. These notes were secured by deeds of trust describing the following property as security:

> Certain grants of land situated in the Dolores Subdivision of the Jose Vasquez Borrego Grant, Abstract 209, Zapata County, Texas, and more fully described in a Warranty Deed dated May 31, 1966, from Euxodio Martinez and Tomasa G. Martinez to Blas M. Martinez and Rosina Urteaga Martinez recorded in Volume 136, pages 384–90, Deed Records of Zapata County, Texas; together with all improvements situated thereon; and,

> A security interest in and to Grantors' .0459515 interest in and to all of the gas which may be produced from the 335.2025 acre pooling unit more fully described in Unit Declaration by Gulf Oil Corp. filed and recorded in Vol. 217, p. 593, of the Deed Records of Zapata County, Texas.

> \* \* \*

> Tract IV: Lot Number One Hundred Ten (110), Block Twenty-two (22), in the City of San Ignacio, Zapata County, Texas.

**2.** The Martinezes were represented by appellee Ken Mackey during the bankruptcy proceedings. Mackey provided the Martinezes with $60,000 worth of legal services during the bankruptcy proceedings.

The deeds of trust further provided that the Martinezes agreed to post as security for their notes "all present and future rent and other income and receipts from the property." Besides addressing the Martinezes' obligation to MC Investments, the plan of reorganization confirmed by the Bankruptcy Court also addressed the Martinezes' outstanding obligation to Mackey for his legal services in connection with their bankruptcy. Although the plan of reorganization confirmed by the Bankruptcy Court addressed the Martinezes' outstanding obligations to Mackey and MC Investments, the plan of reorganization did not address FNBST's judgment lien against the Martinezes.

On May 12, 1999, the Martinezes executed a document with Mackey purporting to assign to him any oil and gas royalty payments they were to receive from the Chevron lease. The Martinezes' assignment to Mackey provides:

> assignors, in consideration of the sum of . . . ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, including but not limited to, forbearance by [Mackey] of the enforcement of writ of execution and Sheriff's sale thereunder set for June 1, 1999, in Zapata County, Texas, for which no lien express or implied is retained, by this Assignment grants and conveys to [Mackey], Assignee, all their right, title, and interest in and to any and all sums of money now due or due to become due, including but not limited to production payments to [the Martinezes], assignors, from . . . Chevron . . . under any oil and gas lease(s) or under any division order(s) made and executed pursuant thereto, upon any real property or mineral or royalty interests owned by Assignors in Zapata County, Texas, including, but not limited to the following:

> Certain grants of land situated in the Dolores Subdivision of the Jose Vasquez Borrego Grant, Abstract 209, Zapata County, Texas, and more fully described in a Warranty Deed dated May 31, 1966, from Euxodio Martinez and Tomasa G. Martinez to Blas M. Martinez and Rosina Urteaga Martinez recorded in Volume 136, pages 384–90, Deed Records of Zapata County, Texas, comprising of approximately 125 acres;

> A .0459515 interest in and to all of the gas which may be produced from the 335.2025 acre pooling unit more fully described in Unit Declaration by Gulf Oil Corp. filed and recorded in Vol. 217, p. 593, of the Deed Records of Zapata County, Texas[.]

Upon receiving the assignment from the Martinezes, Mackey contacted Chevron and directed it to remit all future royalty payments arising from the Chevron lease to him.

The Martinezes eventually defaulted on their obligations to MC Investments. When the Martinezes defaulted on their notes, MC Investments accelerated the Martinezes' debt and appointed a substitute trustee to foreclose on the property the Martinezes used to secure their notes. With the exception of "Lot Number One Hundred Ten (110), Block Twenty-two (22), in the City of San Ignacio, Zapata County, Texas" (the "residential tract"), the substitute trustee sold off the Martinezes' property at a foreclosure sale on August 4, 1999. Great Lakes Investments, Inc./Great Lakes Interests, Inc. ("Great Lakes") purchased the property sold at the substitute trustee's sale. Following its purchase, Great Lakes contacted Chevron and requested the company to remit to it all royalty payments from the Martinezes' former property. Chevron, however, re-

fused to comply with Great Lakes's request.

On August 6, 1999, two days after MC Investments's foreclosure sale, The Madrid and Laredo's Trading Company, Ltd. ("Madrid"), a company owned and represented by Ken Mackey, purchased the judgment FNBST held against the Martinezes. Madrid immediately executed on the judgment, and the Martinezes' property was auctioned off at a Sheriff's sale on October 5, 1999. Madrid appeared at the Sheriff's sale and acquired all of the property in which the Martinezes had an interest.

Chevron continued to make royalty payments to Mackey pursuant to his assignment agreement with the Martinezes until July 28, 2000. When Chevron refused to make any further payments to him, Mackey filed suit against Chevron on October 31, 2001. Mackey filed suit in the 49th Judicial District Court, Zapata County, Texas for, among other things, breach of contract, alleging he was entitled to the royalty payments from Chevron by virtue of the May 12, 1999 assignment he received from the Martinezes. After filing an answer, Chevron began depositing the disputed royalty payments into the registry of the court.

On April 30, 2002, Great Lakes intervened in the litigation between Mackey and Chevron, claiming it owned the right to recover the royalty payments under the Chevron lease since it acquired an interest in the payments through the foreclosure sale by MC Investments. Madrid intervened in the litigation on May 26, 2002, claiming ownership of the property leased to Chevron, the royalty payments generated from the property, as well as the residential tract. Mackey then removed the case to federal court because he believed the underlying suit involved federal questions concerning the interpretation of the bankruptcy reorganization order issued in March 1997 in connection with the Martinezes' bankruptcy.

Mackey, Great Lakes, and Madrid all moved for summary judgment upon removal to federal district court. The parties' motions for summary judgment claimed ownership of either the property subject to the Chevron lease or the royalty payments generated from it. In addition, Madrid asserted its right over Great Lakes to the residential tract. The federal district court granted summary judgment in favor of Great Lakes and against Madrid with respect to the Chevron lease property and the royalty payments, concluding Madrid's lien on such property was invalid because it was created after the Martinezes' automatic bankruptcy stay had taken effect pursuant to 11 U.S.C. section 362. Although Madrid initially sought a judicial determination from the district court regarding the residential tract, the district court declined to address this property essentially because Madrid's conduct in federal court waived its right to a determination as to this property. As for the competing claims to the royalty payments by Mackey and Great Lakes, the district court determined it lacked subject matter jurisdiction to resolve this dispute because it hinged upon the interpretation of state law, not federal law. The district court subsequently remanded the case to state court for the resolution of Mackey's and Great Lakes's claims.

On remand to state court, Great Lakes moved for summary judgment against Mackey on its claim to the royalty payments. Great Lakes's motion argued there were no genuine issues of fact and that it was entitled to judgment as a matter of law over Mackey because:

> [w]hen the owner of real estate executes a valid deed of trust, and then conveys an interest in the mortgaged property to

a third party, the rights of the mortgagor's vendee are subject to the rights held by the beneficiary of the deed of trust. Thus, a foreclosure and sale under a valid deed of trust lien has the effect of passing all right, title, and interest that the mortgagor held at the time the deed of trust was executed, free and clear of the rights of any subsequent purchaser. *See Hampshire v. Greeves*, 104 Tex. 620, 626, 143 S.W. 147, 150 (1912). In this case, Mackey's interest was acquired subsequent to the execution and recording of the deeds of trust of January 1989 and those of March 1997. Thus, the foreclosure sale of August 4, 1999 had the effect of passing all right, title and interest that the Martinezes held at the time the deeds of trust were executed, free and clear of the rights of any subsequent purchaser. Great Lakes attached to its summary judgment motion a copy of its federal summary judgment motion, its federal summary judgment exhibits,[3] and copies of the orders issued by the federal district court in the removal action.

Mackey responded by filing a document entitled "Response to Great Lakes' Motion and Motion for Continuance." This document sought a continuance to allow Mackey time to conduct discovery before the court ruled on Great Lakes's summary judgment motion because no discovery had allegedly taken place as of the time the motion was filed by Great Lakes. Mackey's "Response to Great Lakes' Motion and Motion for Continuance" also claimed Great Lakes: (1) failed to attach proper

summary judgment evidence to its motion; (2) failed to authenticate its evidence; and (3) failed to "fully and fairly apprise the court of all of the arguments made to date and all evidence presented." Lastly, Mackey's "Response to Great Lakes' Motion and Motion for Continuance" asserted the Martinezes never intended for their deeds of trust to MC Investments to "give away all [of] their rights under the Oil and Gas Lease with Chevron" as evidenced by language in MC Investments's deeds of trust indicating that "Leases are not assigned." [4]

The trial court granted summary judgment in favor of Great Lakes. The court concluded Great Lakes's interest in the property subject to the Chevron lease and royalty payments is superior to any interest claimed by Mackey. The court further determined that Great Lakes is entitled to all of the funds deposited into the registry of the court by Chevron. The court denied Mackey's motion for continuance as well as his objections to Great Lakes's summary judgment evidence. Lastly, the court provided "[t]o the extent any of the claims [are] not expressly disposed of [they are] hereby denied" and "[t]his is a final judgment that disposes of all parties and all claims."

## MADRID'S APPEAL

On appeal, Madrid argues there is no final appealable judgment because an issue concerning Great Lakes and Madrid remains pending in the trial court. According to Madrid, following the remand from

---

**3.** These exhibits included: (1) First Federal's note and corresponding deed of trust; (2) MC Investments's notes and deeds of trust; (3) the assignment document executed by the Martinezes and Mackey; (4) FNBST's judgment and abstract of judgment; (5) the assignment of judgment from FNBST to Madrid; and (6) the Sheriff's deed to Madrid.

**4.** Although none of the arguments raised in Great Lakes's motion for summary judgment pertained to Madrid, the record reflects that Madrid filed a response to Great Lakes's motion. This motion essentially raised the same complaints as those raised by Mackey in his summary judgment motion.

federal court, the trial court was required to address the issue of whether Great Lakes or Madrid owns the residential tract described in the summary judgment record as "Lot Number One Hundred Ten (110), Block Twenty-two (22), in the City of San Ignacio, Zapata County, Texas." The record, however, demonstrates that this issue was not an issue before the trial court on remand.

■ Upon intervening in the underlying litigation, Madrid asserted its right to the residential tract, the property subject to the Chevron lease, and the royalty payments. When the case was removed to federal court, Madrid filed a summary judgment motion asking the district court to address its claim to the residential tract as well as its claims to the Chevron lease property and royalty payments. A federal magistrate judge issued a report and recommendation that addressed Madrid's claims to the property subject to the Chevron lease and the royalty payments, but omitted any discussion relating to Madrid's claim to the residential tract. The federal district court adopted the report and recommendation of the magistrate judge, noting "[i]n its motion for summary judgment, Madrid discusses the ownership of ... 'Lot Number One Hundred Ten (110), Block Twenty-two (22), in the City of San Ignacio, Zapata County, Texas.' The Magistrate Judge's report and recommendation, however, does not dispose of this tract, but rather focuses on the [Chevron lease property and the royalty payments] ... No party objects to the Magistrate's confined decision. Hence, the disposition

of this tract is not addressed." The court then granted summary judgment against Madrid and in favor of Great Lakes, concluding Madrid's lien on the Chevron lease property and royalty payments is invalid. The court did not discuss further the issue of the residential tract and declined to address the summary judgment claims of Mackey and Great Lakes concerning the royalty payments from the Chevron lease property. The court subsequently remanded the cause to state court for resolution of Mackey's and Great Lakes's unresolved state law claims.

Although Madrid initially sought to have all of its ownership claims resolved by the federal district court, Madrid failed to object to the magistrate judge's "confined decision" relating only to its claims to the Chevron lease property and the royalty payments. Similarly, Madrid failed to object when the federal district court adopted the report and recommendation of the magistrate judge without ruling on the issue relating to the ownership of the residential tract. By not objecting to the magistrate judge's limited decision or the district court's adoption of the magistrate's ruling, Madrid effectively indicated that it no longer sought a judicial determination regarding its ownership of the residential tract. Accordingly, when the cause was remanded to state court, there was no pending issue between Madrid and Great Lakes regarding the ownership of the residential tract because Madrid had eliminated this particular issue from the case.[5] Madrid's appellate complaint is therefore overruled.[6]

---

5. In any event, Great Lakes acknowledges on appeal that it does not presently have an interest in the residential tract because MC Investments never foreclosed on this property.

6. Madrid also asks this court to address the federal district court's subject matter jurisdic-

tion once the case was removed from state court to federal court. Madrid, however, fails to provide any substantive analysis or rationale explaining why this is a proper consideration for this court, *see* TEX.R.APP. P. 38.1(h); therefore, we decline to address this issue on appeal.

## MACKEY'S APPEAL

### A. Motion for continuance

■ Mackey complains on appeal that the trial court erred in denying his request for a continuance to conduct discovery before addressing Great Lakes's motion for summary judgment. When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery, or a verified motion for continuance. *Tenneco, Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 647 (Tex.1996); *RHS Interests, Inc. v. 2727 Kirby Ltd.,* 994 S.W.2d 895, 897 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Mackey did not file an affidavit with his motion for continuance or verify his motion. By failing to file the required affidavit or a verified motion, Mackey waived his right to complain of the denial of his motion for continuance. *See In re Estate of Price,* No. 04–05–00438–CV, 2006 WL 3725542, *4 (Tex.App.-San Antonio 2006, pet. denied) (mem.op.); *RHS Interests,* 994 S.W.2d at 897.

### B. Great Lakes's summary judgment evidence

Mackey also contends the trial court erred in overruling his objections to Great Lakes's summary judgment evidence. First, Mackey argues Great Lakes failed to authenticate its summary judgment evidence. Second, Mackey asserts Great Lakes's motion relied upon a federal pleading, which is not competent summary judgment evidence.

■ With respect to Mackey's first complaint, the record demonstrates Great Lakes properly authenticated its summary judgment evidence. Documents submitted as summary judgment proof must be sworn to or certified. TEX.R. CIV. P. 166a(f). "Unauthenticated or unsworn documents, or documents not supported by any affidavit, are not entitled to consideration as summary judgment evidence." *Llopa, Inc. v. Nagel,* 956 S.W.2d 82, 87 (Tex.App.-San Antonio 1997, pet. denied). Further, "[i]t is not necessary to separately authenticate documentary evidence or to use 'magic words' so long as the affiant has verified the accuracy of the documents." *Id.*

■ The record on appeal shows Great Lakes attached its summary judgment evidence to an affidavit from its attorney, Alberto Alarcon. In his affidavit, Alarcon indicates that all of the exhibits attached to the affidavit are true and correct copies of the originals. A properly sworn affidavit, like Alarcon's, stating the attached documents are true and correct copies of the originals authenticates the copies so that they may be considered as summary judgment evidence. *See Republic Nat'l Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986); *Kleven v. Tex. Dept. of Criminal Justice–I.D.,* 69 S.W.3d 341, 345 (Tex.App.-Texarkana 2002, no pet.). Mackey's first complaint is overruled.

■ As for Mackey's contention that Great Lakes improperly relied upon a federal pleading to support its summary judgment motion, we are not persuaded by Mackey's argument. Pleadings are ordinarily not considered competent summary judgment evidence, even if sworn or verified. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 660 (Tex. 1995). "[P]roof in support of a summary judgment must be independent of the pleadings." *Burghart v. Conn. Gen. Life Ins. Co.,* 806 S.W.2d 324, 326 (Tex.App.-Texarkana 1991, no writ); *see City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). "Pleadings outline the issues, but they are not evidence." *Shawell v. Pend Oreille Oil & Gas Co.,* 823 S.W.2d 336, 338 (Tex.App.-

Texarkana 1991, writ denied); *see Hidalgo v. Surety Sav. & Loan Ass'n,* 462 S.W.2d 540, 545 (Tex.1971).

The record shows that as part of its summary judgment proof, Great Lakes attached to its summary judgment motion a sworn copy of the motion for summary judgment it filed upon the removal of the case to federal court. The federal court summary judgment motion Great Lakes attached to its state court motion included all of the exhibits that accompanied the federal motion, including: First Federal's note and corresponding deed of trust; MC Investments's notes and deeds of trust; the assignment document executed by Mackey and the Martinezes; FNBST's judgment and abstract of judgment; the assignment of judgment from FNBST to Madrid; and the Sheriff's deed to Madrid. Although Great Lakes attached a pleading to its summary judgment motion, Great Lakes's summary judgment does not rest on reiterations contained within the federal court pleading. Rather, Great Lakes's summary judgment rests upon the exhibits that are attached to the federal court pleading, which we believe constitute competent proof independent of the pleading in this instance. Because Great Lakes's summary judgment does not rest upon proof supplied by a pleading, we overrule Mackey's second complaint.

## C. The trial court's granting of summary judgment in favor of Great Lakes

■ Finally, Mackey claims the trial court erred by granting summary judgment in Great Lakes's favor because he believes his interest in the royalty payments from the Chevron lease property is superior to the interest of Great Lakes. We review a summary judgment *de novo. Reynosa v. Huff,* 21 S.W.3d 510, 512 (Tex. App.-San Antonio 2000, no pet.). We will uphold a traditional summary judgment only if the summary judgment record establishes that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In determining whether a disputed issue of material fact exists which precludes summary judgment, we view as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ It is well settled that "[w]hen the owner of real estate executes a valid deed of trust, and then conveys an interest in the mortgaged property to a third party, the rights of the mortgagor's vendee are subject to the rights held by the beneficiary of the deed of trust." *Motel Enters., Inc. v. Nobani,* 784 S.W.2d 545, 547 (Tex.App.-Houston [1st Dist.] 1990, no writ). Consequently, "a foreclosure and sale under a valid deed of trust lien has the effect of passing all right, title, and interest that the mortgagor held at the time the deed of trust was executed, free and clear of the rights of any subsequent purchaser." *Id.; see Hampshire v. Greeves,* 104 Tex. 620, 143 S.W. 147, 150 (1912).

Here, the Martinezes executed valid deeds of trust to MC Investments in March 1997. These deeds of trust indicate the Martinezes posted as security to MC Investments their interest in the Chevron lease property as well as "all present and future rent and other income and receipts from the [Chevron lease] property." Approximately two years after executing their deeds of trust to MC Investments, the Martinezes attempted to assign to Mackey the royalty payments they were to receive from the Chevron lease property. Because the Martinezes had already posted as security to MC Investments their

interest in "all present and future rent and other income and receipts from the property," which we believe included any royalty payments from the property, Mackey's right to the royalty payments was subject to the rights of MC Investments to such property. Thus, when MC Investments proceeded with the foreclosure and sale under its deeds of trust in August 1999, it passed all of the rights, title, and interest it held at the time the deeds of trust were executed to Great Lakes, free and clear of Mackey's interest. Mackey's challenge to the trial court's summary judgment ruling is therefore overruled.[7]

### D. Texas Rule of Civil Procedure 627

Lastly, Mackey claims the trial court abused its discretion in allowing Great Lakes to withdraw all of the royalty payments Chevron had deposited into the registry of the court prior to the parties' judgment becoming final. Texas Rule of Civil procedure 627 provides:

> If no supersedeas bond or notice of appeal, as required of agencies exempt from filing bonds, has been filed and approved, the clerk of the court or justice of the peace shall issue the execution upon such judgment upon application of the successful party or his attorney after the expiration of thirty days from the time a final judgment is signed. If a timely motion for new trial or in arrest of judgment is filed, the clerk shall issue the execution upon the judgment on application of the party or his attorney after the ex-

piration of thirty days from the time the order overruling the motion is signed or from the time the motion is overruled by operation of law.

Tex.R. Civ. P. 627. Thus, "[u]nder Rule 627, executions of final judgments from district courts may not issue until after thirty days have elapsed since the rendition of the final judgment or after the overruling of any motions for a new trial." *Winkle v. Winkle*, 951 S.W.2d 80, 89 (Tex. App.-Corpus Christi 1997, writ denied). However, a prematurely issued execution of judgment is not void, only voidable. *Id.*

Here, the trial court's judgment was signed January 30, 2006. On February 16, 2006, only seventeen days after the trial entered its judgment, Great Lakes withdrew the funds Chevron had deposited in the registry of the court. The premature withdrawal of these funds by Great Lakes was clearly improper under Rule 627. *See id.* Although it appears the trial court erroneously allowed Great Lakes to prematurely withdraw the disputed funds from the registry of the court, such error was not harmful to Mackey under the circumstances of this case. The trial court's premature release of the funds from the registry of the court constitutes harmless error because Mackey has not demonstrated on appeal that he is entitled to the disputed funds. *See, e.g., id.* at 90 (overruling appellate complaint concerning violation of Rule 627 because appellant could not articulate any particular harm done to him by the trial court's premature order of execution); *Thomas v. Thomas,*

---

**7.** Mackey argues the deeds of trust held by MC Investments did not include as security any royalty payments arising from the Chevron lease property. As support for this contention, Mackey relies on language in MC Investments's deeds of trust indicating that "[l]eases are not assigned." Mackey's argument, however, ignores the unambiguous language in the deeds of trust indicating that MC Investments possessed an interest in "all present and future rent and other income and receipts from the property." The disputed royalty payments fall within this broadly-worded category of "income and receipts from the property"; therefore, we conclude the language cited by Mackey does not support his contention.

917 S.W.2d 425, 436 (Tex.App.-Waco 1996, no writ) (overruling appellate complaint concerning violation of Rule 627 because the judgment debtor did not prevail on the merits of his challenge to the underlying judgment). Mackey's final complaint is therefore overruled.

CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.