SCHMIDT et al. v. BAAR.    (No. 6974.)

(Court, of Civil Appeals of Texas.    Austin.
April 20, 1926.    Rehearing Denied
May 19, 1926.)

**1. Escrows ⬤4—Evidence held insufficient to take to jury question whether oil lease was delivered to defendant, or by him to another in escrow, for plaintiff's use and benefit.**

Evidence held insufficient to take to jury question whether oil lease was unconditionally delivered to defendant as escrow depositary or otherwise, or by him to another in escrow, for plaintiff's use and benefit.

**2. Contracts ⬤42—Delivery is essential to execution of written instrument and is not accomplished while it remains in possession or control of grantor.**

Delivery is essential to execution of written instrument and is not accomplished so long as instrument remains in possession or under control of grantor.

**3. Frauds, statute of ⬤58(1)—Oil lease, conveying title to minerals on execution and delivery, is deed of realty and must be in writing.**

Oil lease, conveying title to minerals on execution and delivery, is in effect a deed of realty and must be in writing.

**4. Escrows ⬤4—In suit against one other than owner of land or grantor in oil lease to compel delivery thereof, plaintiffs must show that defendant was mere depositary or escrow for use of plaintiffs without right in lessor to recall lease.**

In suit against one, other than owner of land or grantor in oil lease, to compel delivery thereof by him, it was incumbent on plaintiffs to show that defendant held instrument under circumstances making him mere depositary for use of plaintiffs or one with whom it was to be placed in escrow without any right in lessor to recall lease.

Appeal from District Court, Fayette County; M. C. Jeffrey, Judge.

Suit by B. Schmidt and others against Leon F. Baar. Judgment for defendant, and plaintiffs appeal. Affirmed.

C. D. Krause, of La Grange, for appellants.
Moss & Lowrey, of La Grange, for appellee.

McCLENDON, C. J. Suit by B. Schmidt, D. L. Lynch, and C. F. Laas, appellants here and plaintiffs below, against Leon F. Baar, appellee here and defendant below, to compel the delivery of an oil lease. The lease was alleged to have been executed by Mrs. Kittie Matthews Baar, in favor of appellant Schmidt as trustee. The cause was tried to the court, and at the conclusion of the introduction of testimony by appellants, appellee orally demurred to the evidence upon the ground that it was insufficient, as a matter of law, to support a finding that the lease had been delivered. The demurrer was sustained and judg-

ment was rendered in favor of appellee. The appeal is from this judgment.

While appellee questions the sufficiency of the evidence to support a judgment for appellants upon a number of other grounds, we will confine our opinion to the specific ground urged in the demurrer to the evidence, for the reason that we have reached the conclusion that the trial court's holding in that regard was correct and other questions raised are therefore immaterial. The question thus presented is one purely of law as to the sufficiency of the evidence to support a finding that the lease was delivered. It will be necessary, therefore, only to state generally what the evidence shows in this regard, without setting forth the testimony of the several witnesses in much detail.

[1] Viewing the evidence most strongly in appellants' favor, it will support the following findings: Appellants had associated themselves together for the purpose of drilling for oil in Fayette county. They were desirous of obtaining leases upon a body of land to contain not less than 6,000 acres, and proposed, as soon as the leases were signed and acknowledged in legal form and placed in escrow with one Morgan, to begin drilling on some part of the leased land. The condition of the escrow was to be that Morgan was to deliver the leases to appellants as soon as they had "spudded in." Appellants employed one Klatt to draw the leases, all of which were upon the same form and differed only in the description of the property and the names of the lessors. Appellant Schmidt, as trustee, was named as lessee, but the evidence showed he was acting for the three appellants. Mrs. Baar owned about 500 acres situated near the center of the 6,000 acres. She was in feeble health at the time, and during a part of the negotiations was in a hospital in San Antonio. There were no direct negotiations between her and appellants, her testimony was not obtained, and she died before the trial. Appellee did not testify at the trial, and the only evidence in support of appellants' case is from witnesses who saw the lease or conversed with appellee. We may assume that the lease was signed and acknowledged by Mrs. Baar and turned over to appellee. All the negotiations which appellants had in the matter were with him, and the evidence will not support a finding that he acted in the matter other than as agent for his mother. The only testimony on this subject is that of Morgan, which we quote in full:

"Mr. Baar has been managing that place out there for his mother. He has been acting as her agent out there for her properties."

The three appellants, Klatt, and Morgan testified to a number of conversations with appellee, some before and some after the lease was signed and placed in his hands. The exact language of these conversations, as detailed by the several witnesses, varied somewhat; but there is no substantial conflict in their testimony as to what took place. Briefly, the negotiations may be summarized as follows: Appellants took up with appellee the matter of securing a lease from Mrs. Baar, and appellee stated he would talk the matter over with her and try to get her to execute the lease. At one time he stated she was in the hospital at San Antonio, but as soon as she was able he would get her to sign up. Later he stated that the lease had been signed and turned over to him, and he showed it to Klatt. Appellee took the lease (or a lease) to Morgan's place of business and left it in Morgan's safe for a few days, but with the distinct statement that it was not to be placed with the other leases, and in a few days he came and got it. Morgan makes it clear that the instrument was not placed with him in escrow, but was put in a special place in his safe where appellee had the privilege of leaving documents for safe-keeping, a privilege which he often availed himself of. To quote Morgan's language:

"He (appellee) said he wanted to leave it there in the safe, but not with the other leases; he emphasized that fact; and I said, 'just stick it up in the safe yourself, then,' and he did so. He put it in the safe at a different place and requested that I not place it with the leases that I had in escrow, to be delivered otherwise. Later on he came and got it himself."

In one or two conversations after the lease was in appellee's hands, he told appellants they could go ahead just as though they had the lease, and gave them what they interpreted as assurance that they would get it. But in all of these conversations there was some statement or reservation to the effect that as his mother was ill he wanted, before delivering the instrument, to consult his sisters. The testimony of Laas is about as strong for appellants in this regard as that of any witness, and we quote from it as typical:

"Of late, Mr. Baar has given me no assurance whatever with reference to drilling that well, as to securing his mother's land. He did at one time, when Dr. Schmidt and I and Mr. Klatt went out there on a Tuesday night, after supper, tell us, after considerable conversation pro and con, that so far as he was concerned, we were entitled to the lease, and that we were going to get the lease, and that we should go ahead with our work, just the same as if we had the lease, and he was going to San Antonio tomorrow, which was Wednesday, that his mother was in such bad condition that they recommended for her to come home, and he was going up there and bring her home Thursday, but that all the children would be at home when they got back Thursday night, and he would like to talk this matter over with the other sisters, that he thought it was nothing but right to show them that courtesy, but just to go ahead with the work just the same as if he had a lease, that he was satisfied they would be perfectly willing to anything he would suggest; so far as he was concerned, that he was willing to turn it over

to us, that he had the lease in the house, signed by his mother, and acknowledged."

The evidence warrants a finding that appellants went ahead with the drilling on a tract contiguous to Mrs. Baar's land, expending considerable money, that they complied with the agreement under which the other leases were placed with Morgan in escrow, and that they did so on the faith of what appellee told them as to their getting the Baar lease. Appellee later refused to deliver the lease without assigning any reason for his action.

[2] The general rule with reference to the execution of written instruments is that delivery constitutes an essential element thereof, and that there is no delivery so long as the instrument remains in the possession or under the control of the grantor. There may be exceptions, or apparent exceptions, to this rule, as in the case of a conveyance by the husband to the wife, the former having legal custody of the latter's property; and in the case of conveyance by a parent to an infant child, and perhaps others not necessary to note. Whatever exceptions to the general rule may exist, none of them are involved in this case. The Texas cases upon which appellants rely are in the main the following: Brown v. Brown, 61 Tex. 56; Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; Taylor v. Sanford, 108 Tex. 340, 193 S. W. 661, 5 A. L. R. 1660; McKnight v. Reed, 30 Tex. Civ. App. 204, 71 S. W. 318; Walker v. Erwin, 47 Tex. Civ. App. 637, 106 S. W. 164; Bone v. Smith (Tex. Civ. App.) 164 S. W. 922; Texas Rice Land Co. v. Langham (Tex. Civ. App.) 193 S. W. 473.

We do not think it necessary to discuss these cases. They are wholly dissimilar in fact from the case at bar, and the propositions of law herein announced are not controlling here.

[3] The instrument, possession of which is sought in this suit, was an oil lease which upon its execution and delivery would constitute a conveyance of title to the minerals; and therefore was in effect a deed of conveyance of real estate. It was necessary that the instrument be in writing. It will be observed that the lease was between appellants as lessees and Mrs. Baar as lessor. The latter did not testify in the case, and there is no evidence in the record showing any agreement between her and appellants, except what may be gathered from the statements of appellee as contained in the several conversations detailed by the witnesses. Viewing these statements of appellee in the most favorable light to appellants, they do not, in our opinion, show an unconditional delivery of the lease to appellee for the use and benefit of appellants, either as an escrow depositary or otherwise. The only relation between appellee and his mother which the evidence will support is that he was her agent in the matter, to whom she surrendered the manual possession of the lease. That possession was given to him as agent, with the authority either to use his discretion alone or to consult and obtain the consent of his sisters, in delivering it to Morgan as escrow depositary. The possession of appellee under the circumstances was clearly the possession of his mother, and as long as the instrument remained in appellee's possession, either actual or constructive, it was under his mother's control and there was no delivery. Whatever discretion she may have vested in him was never exercised. The evidence of Morgan clearly shows that the placing of the instrument in his safe was not in any sense a delivery of it to him as an escrow depositary. It was merely left there by appellee for safe-keeping, and with the distinct and, as Morgan expressed it, the emphatic statement that it was not to be placed with the other leases. The evidence of Morgan clearly negatives any constructive possession of the instrument by him.

With the equities which the evidence presents in favor of appellants we are not here concerned. The suit was solely one for possession of a written instrument, the legal right of possession to which appellants asserted. The assurances which appellee gave appellants that the instrument would be delivered, and his statements to them that they might go ahead with the drilling, do not in any way affect the question as to the instrument's delivery. It may be conceded for the purposes of this case that appellee did not act in good faith, and that appellants suffered injury by reason of promises he made to them and never fulfilled. But these facts do not constitute a delivery of the instrument, nor change the character of its possession by appellee. If these statements had been made by Mrs. Baar, herself, they would not have constituted a delivery of the instrument so long as it remained in her possession either actual or constructive. Whatever rights appellants may have by virtue of the promises, they are certainly not entitled to recover the instrument itself under the proof made.

[4] It may be noted that only appellee was made a party to the suit, and he was sued only in the capacity of a depositary of the instrument. He was not the owner of the land, nor the grantor in the instrument, and it was incumbent upon appellants to show at least prima facie that he held the instrument under such circumstances as to make him a mere depositary thereof for the use of Morgan as escrow depositary, or for the use of appellants without any right on the part of Mrs. Baar to recall the instrument. As shown above, the evidence does not warrant such holding.

Finding no error in the trial court's judgment, it is affirmed.

Affirmed.