## J. M. RADFORD GROCERY CO. v. NOYES.
### (No. 7066.)

Court of Civil Appeals of Texas. Austin.
March 3, 1927.

1. **Landlord and tenant** ⬳18(3)—**Principal and agent** ⬳23(1)—**Evidence held not to warrant finding valid delivery of rental contract, but showed person receiving it to be agent of landlord only.**

In suit on written rental contract, evidence *held* not to warrant finding that person to whom contract was delivered acted as agent for both parties, but that he acted for landlord only, consequently there was no delivery consummating the agreement.

2. **Landlord and tenant** ⬳25(5)—**Where parties contemplated written rental contract, delivery of instrument was essential to its execution.**

Where negotiations of parties contemplated written rental contract, evidenced by duplicate copies, one of which was to be retained by landlord and other returned to tenant, delivery of instrument was essential to its execution.

3. **Landlord and tenant** ⬳25(5)—**There was no delivery of written rental contract, while all copies remained in possession of landlord's agent.**

Where parties contemplated written rental contract, but both duplicate copies remained in possession of landlord's agent, they were under landlord's control, and hence there was no delivery giving effect to the agreement.

Appeal from District Court, Runnels County; J. P. Woodward, Judge.

Suit by Gus Noyes against the J. M. Radford Grocery Company. Plaintiff having died, his surviving wife and executrix, Mrs. Lula Noyes, was substituted as plaintiff. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Davidson & Hickman, of Abilene, for appellant.

A. K. Doss, of Ballinger, for appellee.

McCLENDON, C. J. Suit originally by Gus Noyes against the J. M. Radford Grocery Company (which we will call the company), to recover $600 rentals of a building in Ballinger, under a written contract for the period February 1, 1918, to January 31, 1919. The only question in the case was whether the execution of the contract sued upon was ever, in fact, fully consummated by the parties. There were two trials of the case, each of which resulted in a judgment for plaintiff, the first upon a directed and the second upon a special issue verdict. The former was reversed on appeal to this court. See 233 S. W. 117. Prior to the second trial Gus Noyes died, and Mrs. Lula Noyes, his surviving wife and the executrix of his will, was substituted as plaintiff. The present appeal is from the judgment rendered on the second trial.

The controlling question in the case is whether the evidence will warrant a finding that the execution of the contract sued upon was finally consummated by the parties.

The substance of the evidence bearing upon this issue is as follows: The company was engaged in the wholesale grocery business and had an establishment at Abilene, its principal office, and another at Ballinger, where the business was under the management of F. Holt Smith and was conducted in the building in question. Noyes lived on a ranch in McCulloch county, and R. G. Erwin, the cashier of the First National Bank of Ballinger, represented him as his agent in leasing the building and collecting the rentals. In December, 1917, the company was occupying the building under a written lease, expiring January 31, 1918; and negotiations were begun by the Radford Company for its renewal. On December 5, 1917, C. W. Gill, vice president of the company prepared a lease in duplicate, covering the period February 1, 1918, to January 31, 1919, with an option for an additional year beginning February 1, 1919, at an annual rental of $600, payable monthly in advance. Gill signed the two copies in his official capacity, and forwarded them from Abilene to the local manager, Smith, at Ballinger. Smith delivered the duplicate copies to Erwin, as agent of and to be signed by Noyes, one copy of which was to be retained by Noyes, and the other returned to Smith for the company. Erwin communicated with Noyes, who shortly thereafter came to the Ballinger Bank and left the duplicate copies signed by him with Erwin. In the meantime, Noyes had had a conversation with Smith. According to Noyes' testimony, he told Erwin that:

Smith "was to 'phone to the headquarters to see if Messrs. Radford & Co. would give me 60 days' notice in the event they decided to exercise their option for another's year's lease, and I further told Mr. Erwin at this time that, if they did not agree to giving 60 days' notice, to deliver the contract to them as written."

According to Erwin's testimony, he had a conversation with Smith shortly after Noyes had left the signed contracts with him, in which Smith wanted to get from Erwin exactly what changes Noyes desired made in the contract, and Erwin told Smith the substance of Noyes' wishes giving him a memorandum thereof, reading:

"Option for additional 1 year from 2/1/19, provided you advise him 6 months previous to 2/1/19 if you want building for another year, or, will make straight lease for two years from 2/1/18 at $50 per month."

According to Erwin's testimony, he did not tell Smith in this conversation that if the

---

Radford Company did not agree to these changes he was to deliver the contract as written. He testified, however, that he did make this statement to Smith later on. Quoting from his testimony:

"It was on the street, I told Mr. Smith what Mr. Noyes had instructed me to do, and that if that wasn't satisfactory to them I was to deliver the contracts just as they had drawn them. Gus Noyes had signed them. I do not know whether Mr. Smith replied to that at that time or not—I do not remember—but he knew I held the contracts there at the bank ready to be delivered. I never delivered them. I did not hand the contracts to Mr. Smith, but I told him the contract was there ready to be delivered, and they had prepared them and brought them over."

There is a conflict between Erwin and Smith in that the latter denies ever having been told by Erwin or any one else that if the Radford Company did not agree to the proposed changes Erwin was to deliver the contract as prepared and signed by the parties to Smith. According to Erwin's testimony on rebuttal, the duplicate copies remained in the papers of Noyes and were afterwards turned over to his attorney in this case. The company sold out its business to the Walker-Smith Company about January 1, 1918, and delivered to that company the Ballinger property about January 15, 1918. The Radford Company paid all rentals up to January 31, 1918, when its prior rental contract expired.

Following are the issues submitted to the jury and their answers:

"(1) Did the plaintiff, Gus Noyes, deliver the contract dated the 5th day of December, 1917, described in plaintiff's petition, to Ralph Erwin? Answer: Yes.

"(2) Did the witness Ralph Erwin notify F. Holt Smith that the contract had been signed by Gus Noyes and was there for him? Answer: Yes."

The trial court's judgment recites that:

"The evidence conclusively establishes that, as a matter of law, the said Ralph Erwin was the agent of both the plaintiff and the defendant, J. M. Radford Grocery Company, in the negotiations leading to the execution of the lease contract declared on in plaintiff's petition."

[1] As we view the evidence, it conclusively shows that Erwin was only the agent of Noyes. The latter testified:

"R. G. Erwin, of Ballinger, Tex., was my agent and acted for me in the negotiations leading up to the execution of said lease contract."

And:

"At the time I executed the said rent contract it was in possession of my agent, R. G. Erwin."

Erwin testified:

"I acted as Mr. Noyes' local agent here in connection with the leasing of that building. I collected the rents and looked after the leasing of his property."

The evidence shows without conflict that Smith, as agent and local representative of the company, delivered the instruments to Erwin, as the agent of Noyes, who, after signing them, left them in possession of Erwin, as his agent, one copy to be delivered to Smith for the company in case the latter did not agree to the changes proposed by Noyes.

"A counteroffer by the offeree, relating to the same matter as the original offer, is a rejection of the original offer, unless the offeree at the same time states in express terms that he is still keeping the original offer under advisement." Am. Law Institute, Contracts, Restatement No. 1, § 38.

See, also, in this connection, the A. L. I. Treatise No. 1 (a) Supporting Restatement No. 1, §§ 58, 89, 90, and 91.

We find it unnecessary to determine whether, under the evidence, the counterproposition made to Smith amounted to a rejection of the original offer, or to a mere request, which would keep the original offer still open.

[2, 3] The negotiations of the parties clearly contemplated a contract, in writing, evidenced by duplicate copies, one of which was to be retained by the landlord and the other returned to the tenant; and the suit was upon a written instrument. Under such circumstances, delivery of the instrument was essential to its execution. So long as both duplicate copies, whether signed or not by Noyes, remained in the possession of his agent, they were under his control, and there was no delivery. Schmidt v. Baar (Tex. Civ. App.) 283 S. W. 1115.

The parties, it is true, might have constituted Erwin their joint agent as a repository for the instrument, but the evidence will not support a finding that this was done.

The case has been tried twice, and, so far at least as appellee is concerned, has been fully developed.

The trial court's judgment is reversed, and judgment is here rendered for appellant.

Reversed and rendered.

BAUGH, J., did not participate in the disposition of this case.