**Robert P. SHEEHAN, d/b/a Sterling Realty Co., Appellant,**

v.

**Fred C. DRISKELL et ux., Appellee.**

No. 463.

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 10, 1971.

Rehearing Denied March 31, 1971.

Michael T. Brimble, Davidson, Gray & Brimble, Houston, for appellant.

M. Marvin Katz, Charles E. Fitch, De-Lange, Hudspeth, Pitman & Katz, Sam W. Mintz, Houston, for appellee.

SAM D. JOHNSON, Justice.

Summary judgment case.

The appellant, Robert P. Sheehan, d/b/a Sterling Realty Co., brought suit against the appellees, Fred C. Driskell and wife, Jane G. Driskell, to recover a real estate broker's commission in the amount of $6,-250 for an alleged sale of a motel in Houston, Texas. Based on the pleadings, depositions and response to interrogatories, the trial court granted the defendant's motion

for summary judgment. From the judgment rendered against him appellant perfects this appeal. Plaintiffs in the trial court, appellants here, will be referred to as "Realty Company." Defendants in the trial court, appellees here, will be referred to as "Driskell."

The appellees, Driskell and wife, are U. S. citizens who were residing in Saudi Arabia at all times relevant to this lawsuit. On December 1, 1965, Driskell entered into an exclusive listing agreement with the Realty Company for the sale of the Admiral Motel and Apartments in Houston, Texas, for a purchase price of $135,000. Driskell later modified the original listing agreement to provide for a purchase price of $125,000, with payments of $400 per month on a second lien. Driskell employed a Houston attorney, Harry Jones, to represent him in the sale of the motel property. It was during the time that the parties were in this position to each other that a prospective purchaser, Lee Dykes, was obtained by the Realty Company. On February 7, 1966, Dykes executed an earnest money contract with the Realty Company as broker which provided for the required purchase price of $125,000, the required second mortgage payments in the amount of $400 per month, and deposited $2,000 in earnest money with the appellant Realty Company.

The next day, February 8, 1966, the earnest money contract was delivered by the Realty Company to Driskell's attorney, Harry Jones, for transmittal to Driskell in Saudi Arabia. Being in Saudi Arabia, Driskell was not aware of the offer or of the existence of the earnest money contract. For reasons which are not apparent in the record the earnest money contract was not promptly forwarded but was retained in the office of Driskell's attorney, Harry Jones, in Houston, until March 15, 1966 when Lee Dykes advised the Realty Company that he wished to withdraw the offer. Dykes agreed to leave the offer open only if the second lien payments were reduced on the earnest money contract from $400

per month to $387 per month. As a result the earnest money contract was modified to provide for a second lien payment of $387 per month and then mailed from Houston on March 15, 1966. The day following, March 16, 1966, Dykes wholly withdrew his offer and conveyed this information to the Realty Company and to Driskell's attorney, Harry Jones. At this turn of events the Realty Company promptly returned the $2,000 earnest money to the prospective purchaser, Lee Dykes, on the same date, March 16, 1966.

A number of days thereafter, on March 20, or 21, 1966, Driskell received the earnest money contract in Saudi Arabia. Without knowledge that the offer had been withdrawn and the earnest money returned, Driskell signed the proposed earnest money contract (on March 21st) and mailed it back to his attorney in Houston, with instructions that two additional matters must be "included in the contract of sale." · These two matters were that "the second lien must include a clause that will require the buyer to carry full coverage insurance or $100,000 on bldg. and contents," and that a special "take over" privilege would be required in case the owner failed to keep the first and second lien payments, along with the insurance premiums, paid. On or about March 26, 1966, Driskell's attorney received the letter and signed contract in Houston and placed it in his file. These instruments were not conveyed or delivered to anyone. It was not until over three years later, when Driskell's attorney's deposition was being taken in this lawsuit that the signed contract was obtained.

The appellant Realty Company asserts two theories of action: (1) that a purchaser was produced who was ready, able and willing to buy under the terms in the listing agreement or on other terms acceptable to the appellees, and (2) without regard to the readiness, ability and willingness of the prospective purchaser appellees are liable for the broker's fee because they signed the proposed earnest money contract. The

appellant contends that the trial court erred in granting appellees' motion for summary judgment because material issues of fact exist and because the appellees have not discharged their burden of showing that the appellant had no valid claim.

■ A summary judgment shall be rendered under Rule 166–A, Texas Rules of Civil Procedure, only if it is shown that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. The evidence must be considered from the standpoint most favorable to the appellant. The party opposing the motion. These and the other rules pertinent to the application of a summary judgment to the present fact situation are clearly set forth in Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41 (Tex.Sup.1965).

■ We believe it to be obvious that no purchaser was produced who was ready, willing and able to buy the property in question on terms specified in the listing agreement, or on other terms acceptable to appellee. This is so because the prospective purchaser withdrew and revoked his offer and procured the voluntary return of the earnest money a number of days (at least five) before Driskell received and signed the proposed contract in Saudi Arabia. The prospective purchaser's revocation of the offer was effective because his withdrawal was made prior to acceptance; prior, in fact even to Driskell's knowledge of the contract's existence. Bowles v. Fickas, 140 Tex. 312, 167 S.W.2d 741, (1943), no writ hist. The prospective purchaser's withdrawal of the offer was communicated to the appellant Realty Company (Driskell's agent) and to Driskell's attorney. Aside from its effectiveness when communicated to the principal party hereto, the Realty Company, notice to Driskell's attorney alone is sufficient because notice to an attorney is notice to the client employing him. Dixon v. United States Fidelity & Guaranty Co., 293 S.W. 291, (Tex.Civ.App.1926), writ dismd; Texas Quarries v. Pierce, 244 S.W.2d 571, (Tex.Civ.App.1951), no writ hist. At the time the instrument arrived in Saudi Arabia there was nothing for Driskell to accept.

■■ There is no basis in the record to support the Realty Company's contention that Driskell is liable for the brokerage fees because he signed the proposed earnest money contract. The purported "acceptance" relied upon by the Realty Company was a forwarding of the instrument by Driskell to his own attorney. Though signed, it was accompanied by instructions to his attorney that two additional provisions must be included. Driskell's attorney testified, "As I understood his communication to me, I was to insist on those things and not deliver or do anything to consummate the deal in his name unless those changes could be made." The "acceptance" was therefore conditional and amounted to nothing more than a counter-offer. Even beyond this the quoted testimony confirms (along with other evidence in the record) that there was no delivery of the instrument. There is ordinarily no delivery of an instrument so long as it remains in the possession or under the control of the party by whom delivery is to be made, Schmidt v. Baar, 283 S.W. 1115, (Tex.Civ.App.1926), dismd, and delivery is an essential element of an instrument's execution. Alaga v. Stubblefield, 174 S.W.2d 627, (Tex.Civ.App.1943), no writ hist.

We believe that the undisputed facts are destructive of appellant's theories of recovery. The trial court properly granted Driskell's motion for summary judgment because the record reflected that there could be no genuine issue as to any material fact on which recovery could be predicated, and that appellees were entitled to a judgment in their favor as a matter of law.

The judgment of the trial court is affirmed.