# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10117

USHEALTH GROUP, INCORPORATED,

Plaintiff - Appellee

v.

WILLIAM OLIVER SOUTH; JERRY D. BLACKBURN; GUSTAVO FRAGA,

Defendants - Appellants

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 4:14-CV-757,
4:14-CV-758, 4:14-CV-759

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

William South, Jerry Blackburn,[1] and Gustavo Fraga (collectively, the "Agents") appeal the district court's denial of their petitions to compel arbitration with USHealth Group, Inc. ("USHealth"). The Agents contend that

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] In its letter brief, USHealth states that Jerry Blackburn's counsel has informed USHealth that Blackburn's middle initial is "M"—not "D," as designated in the pleadings before the district court and in the briefing before this court. We will not change the initial here, as Blackburn has not asked this court or the district court to amend his designation.

No. 15-10117

their dispute with USHealth concerning the Agents' acquisition of USHealth stock must be arbitrated.   However, USHealth is a non-signatory to the agreement containing the arbitration clause on which the Agents attempt to rely.   For the reasons that follow, we reject the Agents' arguments that USHealth should nevertheless be forced to arbitrate and AFFIRM the district court's denial of the Agents' petitions to compel arbitration.

## I.  Background

USHealth is an insurance holding company operating under Texas law. It owns various insurers and insurance marketing agencies as subsidiaries. These subsidiaries include USHealth Career Agency, Inc. ("USHealth Career") and Small Business Insurance Advisors, Inc. ("SBIA").  South, Blackburn, and Fraga are insurance agents who worked as independent contractors for USHealth Career and SBIA, selling insurance.  The Agents initially earned commissions for their work through a contract with USHealth Career.  They signed contracts in 2011 with USCare Marketing, Inc., which later changed its name to SBIA.[2]   These agreements (hereinafter the "SBIA Agreements") contained provisions mandating mediation and arbitration in the event of "claims, disputes, and controversies arising out of or in any manner relating to this [SBIA] Agreement, or any other Agreement executed in connection with this Agreement, or to the performance, interpretation, application or enforcement hereto . . . ."

The Agents claim that they helped grow USHealth's business in the areas of Florida they managed through contracts with USHealth subsidiaries and that they were promised and given rewards for this work, but that they were later deprived of those rewards.  The Agents allege that one reward was

---

[2] For simplicity's sake, we will follow the parties' and district court's lead in referring to both USCare Marketing and SBIA simply as "SBIA."

a promise by USHealth Career and SBIA that the Agents would be able to gain equity in USHealth, which presumably was meant to increase in value over time.    USHealth offered the Agents the opportunity to obtain such equity in 2006 through Conditional Offer Letters introducing each Defendant to the Equity Incentive Program ("EIP").  Each of the Agents consented to participate in the EIP, certifying that they satisfied certain conditions for participation. The Conditional Offer Letters and EIP did not contain arbitration clauses. The EIP provided USHealth the right to repurchase any shares issued to the Agents if their "insurance agent relationship[s]" with USHealth Career or SBIA "terminated for any reason."

The Agents claim SBIA cut them out of the profitable Florida insurance market through a two-step process.  First, SBIA promised the Agents access to special health care plans and a deferred compensation bonus program involving SBIA stock under the EIP.  The second step involved SBIA forcing the Agents to sign unfavorable agreements, under which the Agents would not be able to meet the minimum requirements for participation in the EIP.  SBIA gave the Agents a choice between signing the SBIA Agreements and signing "captive" agent agreements, which would prohibit them from marketing products of other companies as they had in the past.  The Agents chose the SBIA Agreements, but those agreements "did not provide any leads to potential new business or access to SBIA's best products, meaning that the products [the Agents] would be able to offer would be inferior and not competitive with the services and products offered by other insurance providers."  Allegedly, SBIA "maliciously planned" to use the Agreements to buy back its shares from the Agents, replacing their stake in the valuable Florida market.

Ultimately, the Agents claim this scenario unfolded exactly as described. USHealth allegedly withdrew important medical products and overpriced others, causing the Agents to become unable to meet their minimum

requirements.[3]   Then SBIA terminated the SBIA Agreements.   USHealth subsequently exercised its option to repurchase the Agents' stock under the EIP, allegedly "for an amount exponentially lower than what was promised to the [Agents]."   Consequently, the Agents exercised the alternative dispute provisions in the SBIA Agreements.

The SBIA Agreements provide for mediation, then arbitration if mediation fails.   The Agents demanded mediation by letter addressed to "USCare Marketing, Inc."  SBIA responded on letterhead bearing SBIA's logo, suggesting terms for mediation.   After failing to successfully mediate the dispute, SBIA issued the Arbitration Demand Letters, stating:

> In view of the fact that there remain outstanding Disputes, as defined in the underlying agreement[s] between [the Agents] and . . . SBIA . . . and USHealth Group, Inc. . . . , it appears it is time to move to mandatory, binding arbitration proceedings required by the agreement.
> Accordingly, on behalf of SBIA, USHealth, and all related entities, please accept this demand as our formal initiation of arbitration proceedings in connection with any and all claims between our companies and [the Agents].[4]

When the parties disagreed about various arbitration details, the Agents filed for a protective order in Texas state court, naming only SBIA as a defendant.   During a hearing to resolve disputes about the details of arbitration, counsel for the Agents specifically stated that the Agents were *not* demanding arbitration with USHealth, only with SBIA.  The Agents filed their first statement of claims before the arbitration panel, naming only SBIA as an opposing party.   In August 2014, USHealth filed this suit against the Agents in state court.  The Agents then filed an amended statement of claims in the

---

[3]  The Agents have not specified which particular requirements they were unable to meet; nor are the allegedly unfavorable terms obvious from the face of the SBIA Agreements.

[4]  SBIA sent three identical letters, one to each individual defendant.  For simplicity, we will refer to them collectively as the Arbitration Demand Letters.

arbitration, naming both SBIA *and* USHealth as opposing parties and alleging throughout that SBIA acted as USHealth's agent or alter ego. The Agents removed the state court suit to federal court and filed petitions to compel USHealth to arbitrate.

In federal district court, the parties disputed whether USHealth's claims should be arbitrated along with the Agents' claims against SBIA. USHealth's state court petition alleged that it relied on the Agents' representations that they met the conditions for participation in the EIP and that it would not have issued stock to the Agents absent those representations. USHealth alleged that the Agents "breached material provisions of the Conditional Offer Letter so as to preclude both [their] participation in the [EIP], as well as the issuance of any restricted common stock thereunder"; thus, USHealth sued for compensatory damages for the alleged breaches of contract, warranties, and covenants, and for a declaratory judgment that the Agents were not entitled to any rights to the stock issued to them. USHealth's allegations accuse the Agents of "fail[ing] to perform [their] contractual obligations," along with making "false representations" that "constitute[d] a breach of express warranties and convenants, . . . as well as implied warranties."

The district court denied the petitions, and the Agents timely appealed.

## II. Jurisdiction

The parties have asserted that the district court had diversity jurisdiction under 28 U.S.C. § 1332, because they claimed that USHealth is a Delaware corporation with its main offices in Fort Worth, Texas, and that the Agents were all diverse from USHealth. However, the notices of removal for Blackburn and Fraga only alleged each agent's residency, without addressing

citizenship or domicile.[5]  After we requested supplemental briefing on this issue, Blackburn and Fraga filed an uncontested motion for leave to amend their notices of removal to allege their domiciles, which we granted pursuant to 28 U.S.C. § 1653.  The amended notices sufficiently allege citizenship, and USHealth does not challenge the additional factual assertions.  The other jurisdictional requirements under 28 U.S.C. § 1332 are satisfied, and we conclude the district court exercised diversity jurisdiction.   We have jurisdiction from its order denying the Agents' motions to compel arbitration under 9 U.S.C. §§ 4 & 16(a)(1)(B).

### III.  Standard of Review

We review the district court's denial of a motion to compel arbitration de novo.  *See Paper, Allied-Indus. Chem. & Energy Workers Int'l Union, Local 4-12 v. Exxon Mobil Corp.*, 657 F.3d 272, 275 (5th Cir. 2011).  It is within the district court's discretion to decide whether to compel arbitration pursuant to equitable estoppel.  *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).  The district court abuses that discretion when it premises its decision on either an erroneous application of the law or a clearly erroneous assessment of the evidence.  *See Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014); *Grigson*, 210 F.3d at 528.  Whether an alter ego relationship existed is a question of fact that we review for clear error.  *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003).  We will only reverse a fact finding as clearly erroneous if we have "a definite and firm conviction that a mistake has been committed."  *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000).

---

[5] South filed an amended notice of removal correcting similar pleading deficiencies at the behest of the district court before the cases were all consolidated.  South's pleadings properly plead that he is domiciled in Florida and thus that he is diverse from USHealth.  *See* 28 U.S.C. § 1332(a)(1); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).

No. 15-10117

## IV. Discussion

When faced with a motion to compel arbitration, courts must first determine whether the parties agreed to arbitrate the dispute at issue. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 247 (5th Cir. 1998). When a party to an arbitration agreement seeks to enforce it against a non-party or non-signatory, we must determine whether principles of state contract law extend the scope of that agreement such that the non-signatory should be bound by it. *See generally Crawford*, 748 F.3d at 257. The parties do not dispute that: (1) USHealth is not a signatory to the SBIA Agreements; (2) there is no arbitration agreement contained in the EIP between USHealth and the Agents; and (3) USHealth has not participated in the mediation or arbitration proceedings between the Agents and SBIA. The Agents thus seek to compel arbitration with USHealth as a non-signatory to the SBIA Agreements under various theories of estoppel and imputation.

We note that the parties do not fully agree about whether Texas or federal law should apply to this dispute.[6] The SBIA Agreements specify that they are governed by the laws of the State of Texas and by the Texas Arbitration Act. Although the Agents argue federal law governs whether USHealth should be compelled to arbitrate, they generally fail to specify how Texas or federal law would result in different outcomes, and they have cited both federal and Texas law in their arguments before the federal courts.

When the parties fail to show that the outcome would differ depending on the laws of more than one forum, the dispute over applicable law is a "false conflict." *See Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d

---

[6] The district court specified that it would deny the Agents' petitions under either law, in part because Texas courts are influenced by "persuasive and well-reasoned federal precedent" that has "explored the extent to which non-signatories can be compelled to arbitrate." *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).

321, 326 & n.2 (5th Cir. 2011). We have applied both federal and state law in past cases to determine "whether non-signatory plaintiffs should be compelled to arbitrate their claims." *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). However, "in determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). Furthermore, we look to "traditional principles of state law" to determine whether an arbitration agreement may be enforced against non-signatories through "state-contract-law theories, including equitable estoppel." *Crawford*, 748 F.3d at 255, 261–62, 262 n.9 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)). We conclude that this case does not present a true conflict. *See id.* at 261–62, 262 n.9; *Hininger v. Case Corp.*, 23 F.3d 124, 125–26 (5th Cir. 1994).

A. *Estoppel*

The Agents assert that USHealth should be compelled to arbitrate due to equitable estoppel, either because USHealth has directly benefitted from the SBIA Agreements or because SBIA and USHealth engaged in interdependent and concerted misconduct to deprive the Agents of valuable equity in USHealth.

1. *Concerted misconduct estoppel*

The district court's rejection of concerted misconduct estoppel was not an abuse of discretion. No applicable authority supports the use of that theory in this case. First, the Supreme Court of Texas has clearly rejected the use of concerted misconduct estoppel to compel a non-signatory to arbitrate. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191–95 (Tex. 2007); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009). The Agents also rely on our decision in *Grigson*, where we held that a signatory was estopped from attempting to avoid arbitration by strategically suing only non-signatory

defendants. The claims in *Grigson* involved allegations of interdependent and concerted misconduct by both the signatories and non-signatories and relied on the agreement containing the arbitration clause. 210 F.3d at 527–28. Assuming arguendo that we could even apply *Grigson* in these circumstances,[7] it does not mandate compelling USHealth to arbitrate. In *Grigson*, we kept a *signatory* to an arbitration agreement from *avoiding that agreement* when suing non-signatories would have required the involvement of the other signatory to the arbitration agreement because of allegedly concerted misconduct. *Id.* at 527–28, 530–31. Principles of estoppel were applied against *signatories to the arbitration agreement* to prevent unfair gamesmanship.

Since then, we have approvingly cited other courts' determinations that this version of estoppel only applies to keep a *signatory* from avoiding its arbitration agreement. *See Bridas*, 345 F.3d at 361. We specifically noted that the reverse does not hold true: a signatory may not use the same logic to estop a non-signatory from avoiding arbitration. *Id.* *Grigson* does not support compelling the *non-signatory*, USHealth, to arbitrate in this case.

*2. Direct benefits estoppel*

The Agents also argue that USHealth should be estopped from suing the Agents in federal court rather than arbitrating its claims because USHealth embraced the SBIA Agreements. "[A] nonparty may be compelled to arbitrate 'if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions.'" *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) (quoting *Kellogg*, 166 S.W.3d at 741). "Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it. On the other hand,

---

[7] The Agents attempt to create a conflict of laws with their arguments on this point, but we conclude that neither Texas nor federal law would support using this theory to compel arbitration here.

claims can be brought in tort (and in court) if liability arises from general obligations imposed by law." *Id.* at 132 (footnote omitted).

Direct benefits estoppel is meant to prevent a non-signatory plaintiff who is seeking or has reaped the benefits of a contract "from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 497–99 (Tex. App.— Dallas 2011, pet. denied) (citing *Kellogg*, 166 S.W.3d at 739). A non-signatory may be compelled to arbitrate if it either (1) "seeks through the claim, to derive a direct benefit from the contract containing the arbitration provision," or (2) "deliberately seeks and obtains substantial benefits from the contract outside the context of its claim." *Id.* The state court held in *Carr* that non-signatories may *not* be compelled to arbitrate when their claims "merely 'touch matters' covered by a contract or 'are dependent upon' a contract; instead, the claims must *rely on the terms of the contract.*" *Id.* at 498 (emphasis added) (quoting *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 348–49 (5th Cir. 2002)).

The district court examined the evidence in the record and found that nothing showed USHealth's "claims against defendants arise from the [SBIA] Agreements or must be determined by reference to them"; therefore, it refused to compel arbitration based on the direct benefits estoppel theory. We find no legal error or abuse of discretion in this determination. The Agents cite *Carr* and *In re Weekley Homes* to support the application of their direct benefits estoppel theory, but those cases do not support compelling arbitration here.

*In re Weekley Homes* is distinguishable. In that case, the non-party who was compelled to arbitrate directly relied on and derived significant benefits from a contract. 180 S.W.3d at 129–30. The non-signatory plaintiff directed construction of the home in which she lived according to the construction contract and by demanding repairs, reimbursement, and other benefits based on the contract. *Id.* at 132–33. After she developed asthma that she attributed

to the construction, she attempted to sue the construction company for negligence. *Id.* at 129–30. The Supreme Court of Texas estopped the plaintiff from relying on her status as a non-signatory to avoid arbitrating a claim that arose from home repairs completed pursuant to a contract from which she directly and purposefully benefitted. *Id.* at 135.

Similar to this case, *Carr* involved a corporate entity, MCD, suing Carr, another entity, for breach of fiduciary duties. *See* 337 S.W.3d at 497–98. Part of the breach of fiduciary duty claim relied on Carr's alleged usurpation of "contracted-for business opportunities from MCD" in violation of a "Development Agreement" that Carr had signed with an alleged corporate affiliate of MCD. *Id.* at 492–93, 497–98. MCD argued its general fiduciary duty claim may have related and referred to the Development Agreement but was not dependent on that agreement, and the Dallas Court of Appeals agreed. *Id.* at 498. This was despite Carr's contentions that the substance of the claim could not be determined without reference to whether Carr violated the Development Agreement and that damages would have to be determined based on the structural arrangement for calculating rent contained in the Development Agreement. *Id.* The court found that MCD could show breaches of independent fiduciary duties even absent breaches of the Development Agreement to which MCD was not a party. *Id.* at 499.

USHealth avers that the Agents made false representations concerning their qualifications to participate in the EIP and that USHealth detrimentally relied on these representations in issuing to the Agents stock to which they were not entitled. The SBIA Agreements were executed in 2011, while the EIP was consummated based on representations made from 2006 to 2010. The EIP also authorized stock repurchase if the Agents' relationships with USHealth Career terminated for any reason. USHealth argues its claims are not based on the SBIA Agreements, but on the allegedly fraudulent conduct of the Agents

in making sworn statements about their qualifications for the EIP in the Conditional Offer Letters and affidavits.

The sworn representations the Agents were required to make for participation in the EIP concerned their contractual relationships with USCare/SBIA. Each of the Agents had to certify that he was an "exclusive Regional Marketing Director of USHEALTH's subsidiary, USHEALTH Career insurance agency, and . . . he was not in breach or violation of any of the terms of his agent contract with USHEALTH Career insurance agency, or . . . derived more than 50% of his annual income . . . from USHEALTH Career insurance agency or the other subsidiaries of USHEALTH." Accordingly, at least some of USHealth's claims relate to the Agents' work for SBIA and USHealth Career and their performance, income, and adherence to USHealth Career's agent contract. The Agents argue from these facts that USHealth sought a benefit from the SBIA Agreements because it hoped to incentivize high performance and compliance with those Agreements through the EIP.

Even if USHealth derived this indirect benefit, the attenuation between the EIP and the SBIA Agreements and the indirect nature of the benefit precludes applying direct benefit estoppel under *Carr*, *In re Weekley Homes*, or other relevant precedents. *See, e.g.*, *In re Weekley Homes*, 180 S.W.3d at 131–32. The Agents' liability to USHealth need not be determined by reference to the SBIA Agreements, nor does it solely arise from those contracts. Instead, liability may derive from representations the Agents made about their compliance with their USHealth Career contracts and their annual income. The Agents have not established a sufficient link between these contracts to show that USHealth derived benefits from the SBIA Agreements with one hand and then sought to reject the Agreements' arbitration provisions with the other. *See, e.g.*, *In re Weekley Homes*, 180 S.W.3d at 131–32; *Carr*, 337 S.W.3d at 498–99; *see also In re Merrill Lynch*, 195 S.W.3d at 817 (noting that under

No. 15-10117

Texas law, the party seeking to compel arbitration has the evidentiary burden to prove it may enforce the agreement).  The district court did not abuse its discretion in declining to apply direct benefits estoppel in this case.

## B.  Alter Ego

The Agents also contend that SBIA is the alter ego of USHealth such that USHealth is bound to the arbitration provisions of the SBIA Agreements. We review a district court's alter ego determination for clear error.  *Bridas*, 345 F.3d at 359.[8]  We have held that "[u]nder the alter ego doctrine, a corporation may be bound by an agreement entered into by its subsidiary regardless of the agreement's structure or the subsidiary's attempts to bind itself alone to its terms, when their conduct demonstrates a virtual abandonment of separateness."  *Id.* at 358–59 (citation omitted).  However, courts do not lightly or routinely pierce the corporate veil.  *See id.* at 359.  Under either Texas or federal law, a corporate relationship is insufficient; rather, the corporation must have exercised such control over the subsidiary that it is clear the two entities have abandoned their separate corporate identities.  *See, e.g.*, *id.*; *see also Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999); *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454–55 (Tex. 2008); *In re Merrill Lynch*, 235 S.W.3d at 191.

---

[8] The Agents have repeatedly insisted that we should review this issue and determine the meaning of certain documents in the record de novo.  They note that the evidence before us is the same documentary evidence considered by the district court and argue that credibility determinations and associated deference should not apply.  The fact that the record contains documentary evidence and a lack of credibility determinations concerning live witnesses does not make the alter ego analysis non-factual.  We have stated before that "[a]lter ego determinations are highly fact-based, and require considering the totality of the circumstances in which the instrumentality functions."  *Bridas*, 345 F.3d at 359; *see also Zahra Spiritual Tr. v. United States*, 910 F.2d 240, 242 (5th Cir. 1990).  Therefore, we review this decision under the clear error standard, although of course we may always correct errors of law underpinning a factual determination.  *See Bridas*, 345 F.3d at 359.  We find no such errors here.

No. 15-10117

Under either Texas or federal law, the district court did not clearly err in finding that the Agents failed to show USHealth and SBIA have abandoned separateness, or that USHealth is attempting to use its separate corporate existence to fraudulently disrupt the arbitration proceedings or evade its obligation to participate in them.    The Agents claim that USHealth's fraudulent conduct is simply bringing suit against the Agents outside the arbitration.    However, the Agents have failed to show the abandonment of separateness that would make this conduct fraudulent under Texas and federal law.[9]

The Agents repeatedly emphasize that the Arbitration Demand Letters purported to initiate mandatory arbitration between "SBIA, USHealth and all related entities . . . in connection with any and all claims between our companies."    The Arbitration Demand Letters do not show that USHealth controls SBIA and has abandoned separateness, as the Agents argue. Although those letters purported to demand arbitration on behalf of both SBIA and USHealth, they described the two entities as (plural) "companies" and do not otherwise evince a lack of separateness.    Standing alone, this is insufficient to show an abandonment of separateness under the alter ego doctrine.

We also reject the Agents' implicit argument that the Arbitration

---

[9] The Agents made various factual arguments before the district court about why USHealth and SBIA did not operate as separate entities.    The Agents do not make these same arguments before this court; therefore, we consider them abandoned. *See Martco Ltd. v. Wellons, Inc.*, 588 F.3d 864, 877 n.10 (5th Cir. 2009); FED. R. APP. P. 28(a)(8).    Even if not abandoned, these arguments lack merit—for example, sharing a treasurer and business address are insufficient to evince corporate control and a lack of separateness. *See, e.g.*, *Gardemal*, 186 F.3d at 593–94 (noting that common ownership, directorship, and financing arrangements between a parent and subsidiary do not necessarily show alter ego status). Agents have also waived the argument that USHealth's status as an insurance holding company under Texas law shows that USHealth "controls" its insurers, which allegedly include SBIA.    We decline to consider this argument, raised for the first time on appeal. *See Mick Haig Prods. E.K. v. Does 1-670*, 687 F.3d 649, 652 (5th Cir. 2012).

14

Demand Letters, standing alone, constitute an agreement to arbitrate. Reviewing this issue de novo, *see In re Liljeberg Enters., Inc.*, 304 F.3d 410, 439 (5th Cir. 2002), we conclude that no agreement was formed.  Even assuming arguendo that the Letters constituted USHealth's offer to arbitrate with the Agents, the Agents did not accept the offer before it was disavowed and withdrawn.  *See generally Bocchi Americas Assocs. Inc. v. Commerce Fresh Mktg. Inc.*, 515 F.3d 383, 392 (5th Cir. 2008) ("An offer results in a binding contract upon acceptance by the other party according to its terms." (quoting *Fail v. Lee*, 535 S.W.2d 203, 208 (Tex. App.—Fort Worth 1976, no writ))); *Hill v. Rich*, 522 S.W.2d 597, 600–02 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) (affirming summary judgment against parties who had failed to accept a counteroffer to purchase property before it was withdrawn by the landowner's offer to other parties); *Sheehan v. Driskell*, 465 S.W.2d 402, 404 (Tex. Civ. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.) ("The prospective purchaser's revocation of the offer was effective because his withdrawal was made prior to acceptance . . . .").  About one year after the letters were sent, the Agents disavowed any intent to view the letters as a viable offer to arbitrate with USHealth, and subsequently USHealth revoked any offer that could have existed when it filed suit against the Agents in state court.  *See generally City of Houston v. Williams*, 353 S.W.3d 128, 140 n.12 (Tex. 2011); *Antwine v. Reed*, 199 S.W.2d 482, 485 (Tex. 1947).

## C.  Inseparability of Claims

Finally, the Agents aver that their claims against SBIA and USHealth are inextricably intertwined or inherently inseparable such that they should be arbitrated together to prevent "factual and legal whipsaw."  The Agents provide no authority to support their contentions that such inseparability would warrant compelling a non-signatory to participate in arbitration, either as a standalone legal theory or as an equitable ground for such relief, and we

have found none.[10] *Cf. In re Merrill Lynch,* 235 S.W.3d at 191–95 (declining to apply estoppel based on substantially interdependent misconduct in part because it is not a traditional ground for estoppel under Texas contract law); *Crawford,* 748 F.3d at 255, 261–62, 262 n.9. We conclude that the district court did not err in rejecting this argument as a possible basis for compelling arbitration.[11]

## V.  Conclusion

We find no abuse of discretion or clear error in the district court's refusal to compel USHealth to arbitrate with the Agents. We therefore AFFIRM the denial of the Agents' petitions to arbitrate.

---

[10] Before the district court, the Agents made the more specific argument that Federal Rule of Civil Procedure 19 and relevant precedent make USHealth an indispensable party to the arbitration. We conclude this argument lacks merit even if Agents have not abandoned that argument on appeal by failing to properly make and support it with citation to authority. *See* FED. R. APP. P. 28(a)(8); *Martco,* 588 F.3d at 877 n.10. Supreme Court precedent holds that alleged joint tortfeasors are merely *permissive* parties under Rule 19, *not* necessary or indispensable parties. *See, e.g., Temple v. Synthes Corp.,* 498 U.S. 5, 7–8 (1990) (holding it was "error to label [alleged] joint tortfeasors as indispensable parties under Rule 19(b) and to dismiss the lawsuit with prejudice for failure to join those parties"). Additionally, assuming arguendo USHealth was an indispensable party to the arbitration, that could only potentially affect whether the arbitration should be dismissed, *not* whether USHealth must be forced to arbitrate without an agreement to do so.

[11] The Agents take language from the district court's order out of context and claim that factual and legal whipsaw has already occurred. We do not see any such conflict in the district court's actions, and even if we did, the Agents point us to no authority suggesting that such a "whipsaw" is legally sufficient to compel a non-signatory to arbitrate.